JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

Rachael DeMarcus, Alexis Silver

**(b)** County of Residence of First Listed Plaintiff  Jefferson County (KY)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Diandra S. Debrosse Zimmermann & Eli J. Hare
DiCello Levitt Gutzler LLC
420 20th Street North, Ste. 2525
Birmingham, AL 35203 (205) 855-5700

Kenneth P. Abbarno, Esq.
DiCello Levitt Gutzler LLC
7556 Mentor Avenue
Mentor, OH 44060 (440) 953-8888

### DEFENDANTS

University of South Alabama, Alexis Meeks-Rydell, Joel Erdmann, Rob Chilcoat, Patricia Gandolfo

County of Residence of First Listed Defendant   Mobile County (AL)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1681, et seq.
Brief description of cause:
Violations of Title IX

### VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Amount to be determined by jury

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
08/31/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Diandra S. Debrosse Zimmermann

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Case 1:21-cv-00380-B   Document 1   Filed 08/31/21   Page 2 of 31   PageID #: 2

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**MOBILE DIVISION**

| | |
|---|---|
| RACHAEL DEMARCUS and ALEXIS SILVER, | Civil Action No. _____ |
| *Plaintiffs*, | |
| *vs.* | **COMPLAINT and** **DEMAND FOR JURY TRIAL** |
| UNIVERSITY OF SOUTH ALABAMA, ALEXIS MEEKS-RYDELL, JOEL ERDMANN, ROB CHILCOAT, and PATRICIA GANDOLFO, | |
| *Defendants*. | |

## COMPLAINT

Plaintiffs Rachael DeMarcus and Alexis Silver, by and through undersigned counsel, hereby file this Complaint against Defendants University of South Alabama (the "University"), Alexis Meeks-Rydell ("Meeks-Rydell"), Joel Erdmann ("Erdmann"), Rob Chilcoat ("Chilcoat"), and Patricia Gandolfo ("Gandolfo") (together, "Defendants"), alleging as follows:

## INTRODUCTION

1.      This is a case that involves a pattern and practice of blatant sexual harassment and sexual and other physical and emotional assault by Defendant Meeks-Rydell during her time as the Head Coach of the University of South Alabama women's volleyball team (the "Volleyball Team" or "Team").  This activity, pattern and practice took place from January 1, 2019 through the 2019-2020 academic school year at the University, and in connection with University-sanctioned wrongful conduct, Defendant Meeks-Rydell was acting in her capacity as Head Coach of the University women's Volleyball Team.

2.      Between 2018 and 2019, Plaintiffs matriculated at the University of South Alabama with the express promise of a prestigious Division I volleyball career and competitive academic opportunities.  However, Plaintiffs' athletic and academic aspirations were negatively impacted by the misconduct of the women's volleyball Head Coach, Defendant Meeks-Rydell, and by the University's facilitation and ratification of her conduct and by the University's decision to ignore Defendant Meeks-Rydell's relentless and pervasive pattern of harassment and physical, psychological, and emotional abuse, in addition to other wrongful acts by the Defendants.

3.      Meeks-Rydell physically abused Plaintiffs by inappropriate touching, including unwanted pinching of Plaintiffs' buttocks, and overtraining and coercing players to continue to practice or play while injured.  Meeks-Rydell used psychological and emotional manipulation and intimidation, among other tactics, to leverage and abuse her position of power and authority over Plaintiffs and other Team members.  At the hands of Meeks-Rydell, Plaintiffs suffered harassment and abuse so severe that they not only suffered physical and psychological issues, but were left no choice but to abandon their athletic and academic careers at the University of South Alabama.

4.      Meeks-Rydell's relentless and pervasive pattern of harassment and abuse occurred in violation of federal and state laws, as well as in violation of National Collegiate Athletic Association ("NCAA") regulations established to protect student-athletes' educational opportunities outside of their chosen sport.  The University had a duty to protect its students from such abuse and the University failed to do so. The University knew of Meeks-Rydell's misconduct, through its officials and agents who were in positions to remedy the circumstances, and refused to act to protect Plaintiffs and other student athletes.   The University acted with deliberate indifference to Meeks-Rydell's actions and the abuse to which Plaintiffs were subject. As a result of the University's actions and failures to act, Plaintiffs were deprived of their enjoyment of

educational opportunities and programs to which they were entitled as student-athletes at the University of South Alabama.

5.  The allegations herein are made upon knowledge of the Plaintiffs and, as to all other matters, upon information and belief gained from investigation undertaken by Plaintiffs' counsel.

6.  Plaintiffs further complain and allege as follows:

## **PARTIES**

7.  Plaintiff Rachael DeMarcus is a 21-year-old student at the University of Louisville, and she is a citizen of the Commonwealth of Kentucky.  She matriculated at the University of South Alabama in 2018 on a full scholarship and began playing for the University's Volleyball Team that fall under the coaching staff in place prior to Defendant Meeks-Rydell's arrival.  Due to Meeks-Rydell's pervasive harassment and abuse, DeMarcus transferred from the University.

8.  Plaintiff Alexis Silver is a 22-year-old citizen of the State of Washington.  Silver matriculated at the University in 2018 and began playing for its Volleyball Team in 2018.  She transferred from the University in 2019 and no longer plays volleyball.

9.  Defendant University of South Alabama is a government entity and public university, located in Mobile, Alabama. The University is a recipient of federal funds under Title IX, 20 U.S.C. §§ 1681-1688 ("Title IX").

10.  Defendant Alexis Meeks-Rydell was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where she was employed by the University as head coach of the University's women's volleyball team.  Meeks-Rydell resigned from the University in February 2021.  Meeks-Rydell is being sued in her individual capacity and, as to claims seeking declaratory and injunctive relief, in her official capacity as an agent and/or employee of the University.

11.     Defendant Joel Erdmann was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where he was, and still is, employed by the University as Athletic Director.

12.     Defendant Rob Chilcoat was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where he was employed by the University as an Assistant Coach of the Volleyball Team.

13.     Defendant Patricia Gandolfo was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where she was employed by the University as an Assistant Coach of the Volleyball Team.

## JURISDICTION AND VENUE

14.     This action is filed pursuant to 42 U.S.C. § 1983 and 20 U.S.C. § 1681, *et seq.* Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

15.     This action also claims violations of Alabama state law.  As these claims are so related to the claims under federal law that they form part of the same case and controversy, this Court has supplemental jurisdiction to hear the Alabama state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and other applicable law, as the causes of action arose primarily in Mobile County, Alabama, which is situated within the district and divisional boundaries of the Southern District of Alabama, Mobile Division.

## FACTS

### I.     THE UNIVERSITY'S WOMEN'S VOLLEYBALL COACHING STAFF

17.     Defendant Meeks-Rydell was hired as the University's Women's Volleyball Team Head Coach on December 31, 2018.

4

18.     On or about February 26, 2021, the University announced Meeks-Rydell was resigning as Head Coach of the Women's Volleyball Team.

19.     Meeks-Rydell is currently an assistant coach at Purdue University Fort Wayne, a University in Fort Wayne, Indiana, where she was hired on June 1, 2021.

20.     As Head Coach of the University's Volleyball Team, Meeks-Rydell had full authority to manage the Team, including scheduling training, practice, travel, and meetings, and arrange who would play in games. She also had discretionary authority to manage the team roster, including offering players positions on the University's women's volleyball team as well as cut members from the team.

21.     According to information and belief, the rest of the coaching staff for the University's women's Volleyball Team, at all relevant times, consisted of two assistant coaches – Rob Chilcoat and Patricia Gandolfo.

22.     Assistant Coach Rob Chilcoat ("Chilcoat"), prior to joining the University coaching staff in January 2019, worked alongside Meeks-Rydell for three seasons, coaching women's volleyball at the University of West Alabama from 2016 to 2018. [1]

23.     Assistant Coach Patricia Gandolfo ("Gandolfo") coached women's volleyball since 2010, and she joined the University's coaching staff in May 2019. [2]

## II.     MEEKS-RYDELL'S ABUSIVE COACHING TACTICS

24.     As Head Coach of the women's Volleyball Team, Meeks-Rydell held a position of authority among the team members, including Plaintiffs.   As Head Coach, Meeks-Rydell controlled team membership, positions, playing time and the power to grant or withhold lucrative scholarships for members of the Volleyball Team.

---

[1] https://usajaguars.com/sports/womens-volleyball/roster/2019 (last visited Aug. 18, 2021).
[2] https://usajaguars.com/sports/womens-volleyball/roster/2020 (last visited Aug. 18, 2021).

25.     Beginning in or about January 2019, Meeks-Rydell had nearly constant contact with members of the Volleyball Team, including Plaintiffs.  Meeks-Rydell supervised the Volleyball Team during daily practices, hosted numerous mandatory social gatherings for team members, and made frequent after-hours contact with team members via telephone, text messages, and/or internet messaging.

26.      Meeks-Rydell created a climate of fear and intimidation among the Volleyball Team while she was the Head Coach, including engaging in a pattern and practice of physical, verbal, and psychological abuse to the Volleyball Team and Plaintiffs individually.

27.     Meeks-Rydell swore at Team members and the individual Plaintiffs and regularly made abusive comments to Team members such as "we're losing because of you," "get the fuck out," and "if you can't fucking do it, then don't do anything at all" when Team members were injured.

28.     Meeks-Rydell would often ridicule Team members who were injured, accusing them of faking injuries and forcing them to play through serious medical conditions, including asthma attacks, ankle sprains, knee injuries, head injuries, and concussions, among others, sometimes resulting in permanent injuries resulting from improper rehabilitation.

29.     Meeks-Rydell used methods disallowed by the NCAA to punish the Team.

30.     Among these punishments were "breakfast clubs," which consisted of forcing the Team to arrive at the gym as early as 4:00 a.m., where Meeks-Rydell would force the players to run and do other physical drills until the players vomited, passed out, or cried due to inability to continue.

31.     Meeks-Rydell routinely required the players to be at the gym as early as 4:00 a.m. for practice in violation of the NCAA Bylaws relating to permitted practice times.[3]

32.     In addition to the physical, verbal, and psychological abuse. Meeks-Rydell also physically groomed and touched Plaintiffs and other volleyball players, and engaged in physical conduct rising to the level of sexual harassment and/or assault.

33.     For example:

a.  Whenever the team travelled for games, Meeks-Rydell would pinch every player's butt as they got off the bus;

b.  Meeks-Rydell slapped Team members, including Plaintiff Rachael DeMarcus specifically, in the face;

c.  Meeks-Rydell forced Team members into "floor hugs" where she would force the Team members to lay on the ground while she laid on top of the individuals;

d.  Meeks-Rydell forced Plaintiffs to hug her and tell her that they loved her;

e.  Meeks-Rydell forced Team members and Plaintiffs individually to constantly tell her that they love her in text messages and in person;

f.  If Meeks-Rydell felt like she was not getting enough positive attention from her players and Plaintiffs individually, she would punish them by emotionally and/or verbally abusing them, limit their ability to play in games, or by making the Team and Plaintiffs participate in intense physical punishment such as breakfast clubs.

34.     Several University officials had direct knowledge of Meeks-Rydell's abusive conduct listed above, including but not limited to Defendants Erdmann, Chilcoat, and Galdolfo.

---

[3] NCAA Bylaw 17.1.7.11.6.1, effective 8/1/2017, states "Required athletically related activities other than competition (and associated activities) shall not occur during a continuous eight-hour period between 9 p.m. and 6 a.m." *See* https://web3.ncaa.org/lsdbi/reports/getReport/90008

35.     Players were constantly getting injured on the team, and Meeks-Rydell would make them play with serious injuries and would attempt to hide those injuries from the school trainers so they would not be deemed ineligible to play.  The hiding of these injuries by Meeks-Rydell was known by Defendants Erdmann, Chilcoat, and Galdolfo.

36.     Meeks-Rydell would abuse and belittle any players on the team who were hurt and would coerce and/or force them to play through their injuries.

37.     Meeks-Rydell resigned from her position at the University on or about February 26, 2021.

## III.     ADDITIONAL FACTS SPECIFIC TO PLAINTIFFS

### a.   Plaintiff Rachael DeMarcus

38.     Paragraphs 1 through 37 are incorporated herein as if set forth in full.

39.     In addition to the physical abuse and harassment alleged above, Meeks-Rydell attempted to form an inappropriate relationship with Plaintiff DeMarcus, and would verbally abuse and/or sexually harass Plaintiff DeMarcus.

40.     Meeks-Rydell routinely became angry at Plaintiff DeMarcus for not reciprocating the type of relationship Meeks-Rydell sought with Plaintiff DeMarcus. For example:



8

41.     This would also result in inappropriate and harassing texts from Meeks-Rydell, including Meeks-Rydell demanding Plaintiff DeMarcus to have a relationship with Meeks-Rydell and to tell Meeks-Rydell that she loves her, as exemplified in the below exchanges:











To: Coach Meeks                                                            Details

9/30/19, 8:17 PM

Keep grinding through the ugly. We all have
days were we feel like we can't be set. But I'm
telling you if you keep playing defense like
this you're going to be unstoppable.

yes ma'am 👍🏼

Do you still love me?

of course ❤️ i just hate disappointing you:(

Oh my gosh babe. I will never be disappointed
in you unless you stop trying. I am proud of
you every day. You have to know I am going to
be harder on you than everyone else and
there are days where I am going to be upset
but never disappointed.

Yes ma'am I appreciate you so much for doing
that and being tough on me. Thank you. I will
do better!

To: Coach Meeks                                                            Detail

10/25/19, 1:55 PM

We going to be friends today?

yes ma'am!

10/26/19, 2:19 PM

I think we should talk before the match today.
Whatcha think?

yes ma'am!

I'll be there around 3:30 and I'll come grab
you.

okay

10/26/19, 10:11 PM

Just want to say it again. I am so sorry for
hurting you. I love you so much.

10/26/19, 11:25 PM

Thank you again. I love you ❤️❤️❤️

11



42.     On August 18, 2019, the final day of preseason training, Plaintiff DeMarcus suffered a high ankle sprain, requiring her to wear a stabilizing boot and use crutches. Despite a recommended healing time of 4-6 weeks, Meeks-Rydell insisted that Plaintiff DeMarcus play in the first game of the season on August 30. 2019, telling Plaintiff DeMarcus that she has to play if she wants to win, and further instructing Plaintiff DeMarcus not to tell the athletic trainer how bad her ankle was sprained. Plaintiff DeMarcus ended up not being physically cleared to play in the August 30, 2019 game.

43.     The next day, on August 31, 2019, Meeks-Rydell approached Plaintiff DeMarcus in the airport, in Atlanta, prior to boarding their flight back to Mobile, Alabama, and slapped

Plaintiff DeMarcus across her face – presumably in retaliation for being honest with the athletic trainer about her ankle injury.

44.    Chilcoat and Gandolfo, as well as other Team members and staff, witnessed Meeks-Rydell strike Plaintiff DeMarcus.

45.    Additionally, Meeks-Rydell manipulated and/or forced Plaintiff DeMarcus to spend money on purchasing coffee and other items for Meeks-Rydell. For example:



46.    On September 14, 2019, the Team played in a tournament at Kennesaw State University.

47.    During the first game, Plaintiff DeMarcus was kneed in the back of the head by another player, causing her to partially lose consciousness, become dizzy, and lose balance. Plaintiff DeMarcus's eyes were watering because of the impact that just occurred, and informed Meeks-Rydell that she couldn't see well and was very dizzy from the impact to her head.

48.    Instead of following University and NCAA concussion protocol, Meeks-Rydell ordered Plaintiff DeMarcus not to tell the Team athletic trainer about the injury, because the trainer would take Plaintiff DeMarcus out of the game pursuant to concussion protocol, and resulting in Plaintiff DeMarcus being held out of games for weeks. Meeks-Rydell further emphasized her desire to win the game and, therefore, instructed Plaintiff DeMarcus to play through the head injury.

49.    Throughout the game, Meeks-Rydell interfered with any attempts of the athletic trainer to assess Plaintiff DeMarcus for a concussion.

50.    The Team athletic trainer informed Plaintiff DeMarcus that she, indeed, had suffered a severe concussion.

51.    As a result of the concussion, Plaintiff DeMarcus suffered impaired vision, constant headaches, and a severe loss of appetite.

52.    Shortly after Meeks-Rydell began her abusing coaching tactics, Plaintiff DeMarcus developed symptoms of Supra Ventricular Tachycardia ("SVT"), including shortness of breath, chest pain, and an accelerated heartbeat.

53.    Despite the concerns of Team physicians, Meeks-Rydell coerced and/or forced Plaintiff DeMarcus to engage in breakfast clubs, practice, and games through her condition.

54.    Plaintiff DeMarcus was unable to continue playing volleyball because of the severity of the SVT and due to the abuse and harassment imposed by Meeks-Rydell.

55.    Due to the stress-induced severity of her SVT, Plaintiff DeMarcus was required to undergo significant testing, wear heart monitors, and take a break from volleyball, and ultimately ended up having to get an ablation procedure to fix the SVT. This caused further mental, emotional, and physical trauma.

56.    During the 12 months under Meeks, Plaintiff DeMarcus also suffered daily from anxiety and depression.

57.    On December 3, 2019, Plaintiff DeMarcus informed Meeks-Rydell that she was transferring out of the University.

   **b.  Plaintiff Alexis Silver**

58.    Paragraphs 1 through 57 are incorporated herein as if set forth in full.

14

59.     Like her other Team members, Plaintiff Alexis Silver endured significant verbal, emotional, physical, and/or sexual harassment during her time at the University under Coach Meeks-Rydell.

60.     Plaintiff Silver was routinely subjected to the allegations above, including but not limited to breakfast clubs in the early mornings, forced full body contact with Meeks-Rydell, and extensive and demeaning verbal harassment.

61.     As a result of the stress endured during this time, Plaintiff Silver suffered three to four panic attacks a day and lost 40 pounds in one semester.

62.     Due to this, Plaintiff Silver was forced to withdraw from playing volleyball and was unable to complete her education at the University.

63.     Plaintiff Silver still suffers from severe emotional distress as a result of the abuse and harassment she suffered from Meeks-Rydell while attending the University.

## IV.     THE UNIVERSITY FAILED TO PROTECT PLAINTIFFS AFTER BECOMING AWARE OF DEFENDANT MEEKS-RYDELL'S ABUSE

64.     Based on information and belief, Meeks-Rydell had a reputation for instilling a pattern and practice of abuse and/or sexually harassing conduct at her previous jobs, including while employed as Head Coach at the University of West Alabama.

65.     The University should have come to the knowledge of Meeks-Rydell's unfitness for the coaching position had it not been reckless and/or recklessly indifferent in its hiring, or if it had exercised reasonable care in its hiring.

66.     Additionally, during the entirety of her time at the University, Meek-Rydell's inappropriate and abusive conduct frequently happened in front of the other coaches and staff, including Chilcoat, Gandolfo, among others.

67.     According to information and belief, one Team member's parent contacted University Director of Athletics Joel Erdmann directly and informed him of Meeks-Rydell's inappropriate conduct.

68.     Erdmann, therefore, had knowledge of Meeks-Rydell's abuse and inappropriate conduct.

69.     Erdmann was the appropriate person to take preventative action to protect Plaintiffs, and he failed to take any preventative actions.

70.     Thus, the University and appropriate persons to take preventative action had direct knowledge of Meeks-Rydell's repeated abusive and harassing conduct.

71.     Assistant Coaches, including Chilcoat and Gandolfo, were present and directly aware of the physically abusive butt pinching, slapping, "floor hugs," forced hugs, and breakfast clubs, as well as the emotionally manipulative and abusive verbal harassment such as forcing Team members to say "I love you" to Meeks-Rydell.

72.     Chilcoat and Gandolfo were appropriate persons to take preventative action and they failed to take preventative actions to protect Plaintiffs from Meeks-Rydell's abuse.

73.     In spite of their knowledge, Defendants University and Erdmann failed to take any action to protect Plaintiffs after becoming aware of Meeks-Rydell's abuse.

## CAUSES OF ACTION

### COUNT I
### 20 U.S.C. § 1681, *et seq.*
### [Violation of Title IX against Defendant University]

74.     Paragraphs 1 through 73 are incorporated herein as if set forth in full.

75.     Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The University of South Alabama cannot dispute that it was at the relevant times hereto, and continues to be, a recipient to Federal financial assistance, subject to Title IX.  Sexual harassment of students is one form of discrimination on the basis of sex prohibited by Title IX.  *See Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

76.     To prevail in a teacher-on-student harassment claim, the plaintiff must be able to 1) identify a person with "authority to take corrective measures in response to actual notice of sexual harassment," 2) demonstrate that the notice was "sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment," and 3) show that the authority figure acted with deliberate indifference to the notice of harassment.  *J.F.K. v. Troup Cty. Sch. Dist*., 678 F.3d 1254, 1255-56 (11th Cir. 2012) citing *Doe v. School Bd. Of Broward County, Fla,* 604 F.3d 1248, 1254 (11th Cir. 2010); *Hurt v. Shelby Cnty. Bd. of Educ.*, 198 F. Supp. 3d 1293, 1317 (N.D. Ala. 2016). Plaintiffs can satisfy all of these inquiries.

77.     Defendant University is an educational institution, a recipient of federal funds, and is subject to private causes of action under Title IX.

78.     Defendant University had knowledge of extensive, offensive, and perversive gender-specific abuse and harassing conduct, which was directed at Plaintiffs and which was based on their sex, in violation of Title IX, 20 U.S.C. § 1681, *et seq.*  The omissions and/or commissions by Defendant University were both subjectively and objectively unreasonable and resulted in harm to, and the interference with and denial of educational and athletic opportunity for, each of the Plaintiffs.

79.     Defendant Meeks-Rydell, who was the head volleyball coach, in a position of authority over Plaintiffs, and who had daily contact with Plaintiffs, intentionally and repeatedly

harassed Plaintiffs during her tenure at the University, including by subjecting them to gender-specific harassment and by subjecting them to general, pervasive, and persistent harassment, including unwanted sexual advances and unwanted touching.

80.    The abuse and harassment Plaintiffs experienced was unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to routinely and systematically deprive Plaintiffs of equal access to educational activities and programs.

81.    The harassment was so severe, pervasive, and objectively offensive that it barred Plaintiffs' access to the education and activities to which they were entitled while attending the University.

82.    Defendant University – through University officials and specifically through Defendants Erdmann, Chilcoat, and Gandolfo – had actual knowledge of the harassment and misconduct by Defendant Meeks-Rydell toward Plaintiffs.

83.    Defendant University – as well as Defendants Erdmann, Chilcoat, and Gandolfo who were appropriate persons for the purposes of notice under Title IX – was on actual notice of the harassment and misconduct by Defendant Meeks-Rydell toward Plaintiffs.

84.    Defendants University had the authority to initiate corrective action to stop Meeks-Rydell's unlawful conduct to prevent the continued and repetitive harassment of Plaintiffs based on their gender.

85.    Defendant University had the authority to institute corrective measures to remedy the willful violations of Title IX.  However, they failed to undertake such actions and instead acted with deliberate indifference to these violations.  The University failed to take disciplinary or remedial action against Meeks-Rydell.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II
### 42 U.S.C. § 1983
### [Violation of Substantive Due Process
### against Defendants University, Erdmann, Chilcoat, and Gandolfo]

86.     Paragraphs 1 through 85 are incorporated herein as if set forth in full.

87.     Plaintiffs have a liberty interest in their bodily integrity, which is protected by the Due Process Clause of the Fourteenth Amendment.[4]

88.     Defendant University denied Plaintiffs' Substantive Due Process Rights by failing to protect them from harassment and sexual assault and through participation in an incompetent scheme whereby Plaintiffs were left alone and unprotected in compromising situations with Meeks-Rydell, whereby Meeks-Rydell could take advantage of her position of power and authority over Plaintiffs and harass and assault them with impunity.

89.     Meeks-Rydell's conduct directly and unreasonably interfered with Plaintiffs' education and participation in the women's volleyball program at the University and created an intimidating, hostile and offensive environment that affected Plaintiffs' psychological well-being and deprived them of the rights guaranteed to Plaintiffs under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

90.     Defendant University demonstrated deliberate indifference toward the Plaintiffs' constitutional rights by failing to protect Plaintiffs from the known and continuous abusive conduct

---

[4] *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 138 L. Ed. 2d 772 (1997) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Plaintiffs were subjected to under Meeks-Rydell while on the University campus and at University sponsored events.

91.     Due to Defendant University's deliberate indifference, Defendant University proximately caused the violation of Plaintiffs' rights.

92.     As a direct result of the failure of the University to intervene, report or prohibit the inappropriate and harassing conduct of Meeks-Rydell, Plaintiffs have been deprived of the rights guaranteed to them under the Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

93.     Defendants Erdmann, Chilcoat, and Gandolfo had actual knowledge of Meeks-Rydell's continuous abusive conduct towards Plaintiffs and were in a position to take preventative action, and, by failing to take any preventative action to protect Plaintiffs, demonstrated deliberate indifference toward the Plaintiffs' constitutional rights and thereby proximately caused the violation of those rights.

94.     As a direct result of the failure of Erdmann, Chilcoat, and Gandolfo to intervene, report or prohibit the inappropriate and harassing conduct of Meeks-Rydell, Plaintiffs have been deprived of the rights guaranteed to them under the Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT III
### Negligent/Wanton/Reckless Hiring, Retention, and Supervision in Violation of Alabama Law
### [Against Defendant University]

95.     Paragraphs 1 through 94 are incorporated herein as if set forth in full.

96.     At all times relevant to this action, University and Meeks-Rydell engaged in an employer-employee relationship.

97.     As alleged above, Meeks-Rydell had a history of similar, outrageous and harassing conduct at the prior university where she worked.

98.     Defendant University failed to conduct a reasonably prudent investigation into Meeks-Rydell's background and history prior to hiring her in December 2018.  The University had a duty to exercise reasonable care for the safety and wellbeing of its students, and in fulfilling this duty, it was obligated to conduct a thorough investigation before installing Meeks-Rydell in a coaching position, especially in light of the position of power and authority that Meeks-Rydell would have over Plaintiffs' and other young women's daily lives and academic and athletic opportunities.[5]  The University would have come to the knowledge of Meeks-Rydell's unfitness for the coaching position had it exercised reasonable care in its hiring.

99.     The University was negligent, reckless, wanton, and/or recklessly indifferent in its hiring of Meeks-Rydell.  As set forth above, the University knew or should have known of Meeks-Rydell's propensity for tortious conduct, including without limitation harassment of students.

100.    The University was negligent, reckless, wanton, and/or recklessly indifferent in failing to adequately supervise Meeks-Rydell during her tenure as Head Coach.

101.    The University was negligent, reckless, wanton, and/or recklessly indifferent in retaining Meeks-Rydell after being put on notice of the severe, offensive, pervasive, and discriminatory abuse and harassment of Plaintiffs.

---

[5] *See, e.g., Massey v. Smithway Motor Xpress, Inc., et al.*, (Memorandum of Opinion, pg. 14, 7:08-cv-02025-LSC, N.D.A.L., Jan. 27, 2010), "In the context of a negligent or wanton hiring, retention, and supervision claim, 'an employer has a duty to exercise reasonable care for the safety of his customers, patrons, or other invitees, and in fulfilling this duty he must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with [those persons].'" (quoting *Brown v. Vanity Fair Mills, Inc.*, 291 Ala. 80, 82 (Ala. 1973)).

102.    Meeks-Rydell's conduct made her unfit to hold the position of Coach and created a danger of imminent harm to the members of the University's Volleyball Team.

103.    Notwithstanding the University's actual knowledge of Meeks-Rydell's outrageous conduct and unfitness for the position of Head Coach, the University retained Meeks-Rydell and failed to take immediate and appropriate action to protect the female members of the Volleyball Team.

104.    Defendant Meeks-Rydell was acting in the line and scope of her employment when she harassed Plaintiffs, and her actions were so closely connected with her duties and so fairly incidental to her employment that they should be regarded as carrying out the objectives of her position on the University staff.

105.    As a direct and proximate cause of the University's negligent, reckless, wanton, and/or recklessly indifferent hiring, supervision, and retention, Plaintiffs suffered damages, including but not limited to emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, economic loss and alienation both academically and socially from school activities.

106.    Defendants' conduct has been, until Meeks-Rydell's resignation, continuous in nature, thereby constituting a continuing tort through that date.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants for compensatory and punitive damages in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT IV
**Assault and Battery in Violation of Alabama Law**
**[Against all Defendants]**

107.    Paragraphs 1 through 106 are incorporated herein as if set forth in full.

108.    A teacher or school administrator is liable for assault and battery where the conduct is in contravention of the school's policies and where the agent acted with malice.

109.    As described above, Plaintiffs were assaulted and battered by Meeks-Rydell in all ways aforementioned, including all above-described physical touching.

110.    Defendant Meeks-Rydell's intentional assault and battery was in contravention of the University's policies, and was without just cause or excuse.

111.    Defendants University, Erdmann, Chilcoat, and Gandolfo countenanced and ratified the assault and battery of Plaintiffs by Meeks-Rydell when they failed and refused to take any reasonable steps to protect Plaintiffs from the assault and battery. Accordingly, Defendants University, Erdmann, Chilcoat, and Gandolfo are responsible for the assault and battery upon Plaintiffs.

112.    As a proximate consequence thereof, Plaintiffs were caused to suffer damages as enumerated herein.

113.    The actions and/or omissions of Defendants in harming Plaintiffs as set out above were willful and wanton.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT V
### Invasion of Privacy in Violation of Alabama Law
### [Against all Defendants]

114.    Paragraphs 1 through 113 are incorporated herein as if set forth in full.

115.     The actions of Meeks-Rydell described above constituted an invasion of privacy upon Plaintiffs' physical solitude and/or seclusion and did so in violation of ordinary decency, imposing emotional distress upon Plaintiffs.

116.     Defendants University, Erdmann, Chilcoat, and Gandolfo countenanced and ratified the assault and battery of Plaintiffs by Meeks-Rydell when they failed and refused to take any reasonable steps to protect Plaintiffs from the assault and battery. Accordingly, Defendants University, Erdmann, Chilcoat, and Gandolfo are responsible for the assault and battery upon Plaintiffs.

117.     As a proximate consequence thereof, Plaintiffs were caused to suffer damages as enumerated herein.

118.     The actions and/or omissions of Defendants harming Plaintiffs as set out above were willful and wanton.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT VI
### Intentional Infliction of Emotional Distress (Outrage)
### in Violation of Alabama Law
### [Against all Defendants]

119.     Paragraphs 1 through 118 are incorporated herein as if set forth in full.

120.     To succeed on an action based on outrage, a plaintiff must prove (1) the Defendants intended to inflict emotional distress, or know or should have known that emotional distress would likely result from their conduct; (2) the Defendants' conduct was extreme and outrageous; (3) the Defendants' actions caused her distress; and (4) the distress was severe.

121.    Defendants knew or should have known that Meeks-Rydell's physical, emotional, and psychological abuse of Plaintiffs, would likely result in emotional distress.

122.    Defendants Erdmann, Chilcoat, and Gandolfo's deliberate indifference to Meeks-Rydell's continuous extreme and outrageous conduct, including but not limited to sexual assault, physical assault, emotional and psychological abuse, itself constitutes extreme and outrageous conduct.

123.    Defendants' extremely and outrageously reckless, intentional, and egregious conduct was known or should have been known to result in emotional distress.

124.    As a result of Defendants' conduct, Plaintiffs suffered severe emotional distress.

125.    Given the Defendants' conduct itself and the ramifications of Defendants' conduct on Plaintiffs' lives, the damage and emotional distress on Plaintiffs is so severe that no reasonable person could be expected to endure it.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants for compensatory and punitive damages in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT VII
### Breach of Contract
### [Against Defendant University]

126.    Paragraphs 1 through 125 are incorporated herein as if set forth in full.

127.    Plaintiffs and the University entered into a contract wherefore Plaintiffs would play on the University Volleyball Team in exchange for a tuition-free higher education, an adequate and safe living environment, and an adequate and safe educational environment.

128.    Instead, Plaintiffs were subjected to frequent abuse, depriving them of the tuition-free higher education, adequate and safe living and/or educational environment the University was obligated to provide for Plaintiffs.

129.    The University breached their contracts with Plaintiffs, among other ways, by failing to adequately prevent Plaintiffs from the dangerous and harassing conditions on campus that Defendant University allowed to metastasize in light of their knowledge of Defendant Meeks-Rydell's continuous abuse and harassment of Plaintiffs.

130.    Defendant University breached these contracts with Plaintiffs by failing to provide an adequately safe living and educational environment for Plaintiffs.

131.    As a result of these breaches, Meeks-Rydell's harassment of Plaintiffs was allowed to continue and go unpunished.

132.    As a result of these breaches, Plaintiffs suffered the loss of the support of Defendant University in important matters affecting their education, and Plaintiffs were humiliated in the face of their harasser.

133.    Specifically, Plaintiff Silver was forced to transfer out of the University and forego her scholarship – and her free education – and is now forced to pay for her education at another institution due to the University's breaches.

134.    Plaintiff DeMarcus similarly was forced to transfer out of the University and forego her scholarship due to the University's breaches and lose her free education – and is now forced to pay for her education at another institution.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order which will:

A.      Declare the conduct engaged in by the Defendants to be in violation of Plaintiffs' rights under federal and Alabama law;

B.      Award Plaintiffs compensatory damages against the Defendants in an amount that will fully compensate Plaintiffs for all they suffered and continue to suffer in the future as a direct and/or proximate result of the statutory and common law violations as set forth herein;

C.      Enter a judgment against Defendants for such punitive damages as will properly punish them for the constitutional, statutory, and common law violations perpetrated against Plaintiffs as alleged herein, in an amount that will serve as a deterrent to Defendants and others similarly situation from engaging in similar conduct in the future;

D.      Award Plaintiffs pre-judgment and post-judgment interest at the highest rates allowed by law;

E.      Award Plaintiffs costs and attorneys' fees;

F.      Award statutory damages pursuant to 42 U.S.C. § 1983;

G.      Assume continuing and indefinite jurisdiction to ensure compliance with the terms of the Orders requested herein; and

H.      Award Plaintiffs such other and further relief, including equitable relief, that this Court deems just and proper.


DATED:  August 31, 2021

                                                    */s/Diandra S. Debrosse Zimmermann*
                                                    Diandra S. Debrosse Zimmermann

(ASB-2956-N76D)
Eli J. Hare
(ASB-1024-T20Q)
**DiCELLO LEVITT GUTZLER LLC**
420 20th Street North, Suite 2525
Birmingham, Alabama 35203
(205) 855-5700
fu@dicellolevitt.com
ehare@dicellolevitt.com

Kenneth P. Abbarno
(*Pro Hac Vice* application forthcoming)
**DiCELLO LEVITT GUTZLER LLC**
Western Reserve Law Building
7556 Mentor Ave
Mentor, Ohio 44060
(440) 953-8888
kabbarno@dicellolevitt.com

*Counsel for Plaintiffs*

28

**PLEASE SERVE THE SUMMONS AND COMPLAINT BY CERTIFIED MAIL ON THE DEFENDANTS AT THE FOLLOWING ADDRESSES:**


**UNIVERSITY OF SOUTH ALABAMA**
C/O KRISTEN DUKES, OFFICE OF GENERAL COUNSEL
301 UNIVERSITY BLD, AD 140
MOBILE, AL 36688

**ALEXIS MEEKS-RYDELL**
17010 PLATTER PARKWAY
NEW HAVEN, IN 46774

**JOEL ERDMANN**
6438 CLEAR POINTE COURT
MOBILE, AL 36618

**ROB CHILCOAT**
966 HOPE STREET
PROVIDENCE, RI 02906

**PATRICIA GANDOLFO**
9451 HUMMINGBIRD BOULEVARD
PENSACOLA, FL 32514