IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RACHAEL DEMARCUS, ALEXIS SILVER, CAITLIN TIPPING, MEAGHAN JONES, HANNAH KAZEE, HANNAH JOHNSON, JANE DOE 1, and JANE DOE 2, | * * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO.: 1:21-CV-00380-KD-B |
| v. | * * | |
| UNIVERSITY OF SOUTH ALABAMA, ALEXIS MEEKS-RYDELL, JOEL ERDMANN, ROB CHILCOAT, PATRICIA GANDOLFO, JINNI FRISBEY, and CHRIS MOORE, | * * * * * * | |
| Defendants. | * | |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants Jinni Frisbey and Chris Moore move to dismiss Plaintiffs' First Amended Complaint.[1] Plaintiffs' claims against University of South Alabama Senior Associate Athletic Director Jinni Frisbey and Associate Athletic Director for Compliance Chris Moore should be dismissed because they fail to state a claim and these Defendants are entitled to immunity. Moreover, all except one of Plaintiff Alexis Silver's claims are barred by the statutes of limitations because she left the University more than two years prior to filing this lawsuit.

Plaintiffs assert the following causes of action against Frisbey and Moore individually (as modified by Plaintiffs' withdrawal of their conspiracy claim in their brief filed on February 8, 2022

---

[1] Defendants Frisbey and Moore were added to this case in Plaintiff's amended complaint filed on December 17, 2021. (Doc. 31). Plaintiffs' counsel issued requests to waive service of a summons on December 20, 2021, which were executed and returned by counsel for these Defendants, making this motion timely filed today.

(Doc. 48, PageID.334, n.2)): violation of substantive due process under 42 U.S.C. § 1983 (Count II); assault and battery (Count IV); invasion of privacy (Count V); and intentional infliction of emotional distress (Count VI).

## FACTUAL SUMMARY OF ALLEGATIONS[2]

### I.  Generalized Allegations.

Plaintiffs Rachael DeMarcus, Alexis Silver, Caitlin Tipping, Meaghan Jones, Hannah Johnson, Hannah Kazee, Jane Doe 1 and Jane Doe 2[3] are current or former student athletes on the University's volleyball team. (Doc. 31, PageID.155-156.)  Plaintiffs allege generally that Alexis Meeks-Rydell, the former Head Coach of the team from January 2019 until early 2021, engaged in sexual harassment and sexual and other physical and emotional assault against them. (Doc. 31, PageID.154-155.) Plaintiffs further allege that Defendants Joel Erdmann, the University's Athletic Director, former Assistant Coaches Rob Chilcoat and Patricia Gandolfo, Senior Associate Athletic Director Jinni Frisbey,[4] and Associate Athletic Director for Compliance Chris Moore were aware of the alleged abuse and failed to take action to prevent it.

Plaintiffs allege that Meeks-Rydell maintained constant contact with the volleyball team, including frequent after-hours contact, and that she "created a climate of fear and intimidation," regularly swearing and making abusive comments" and ridiculing team members who were

---

[2] Without waiver or admission and for purposes of this motion only, Plaintiffs' allegations are taken as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).
[3] Jane Doe 1 and Jane Doe 2 moved to proceed anonymously, which was denied. (*See* Docs. 30, 37 38, and 46.) They have until February 22, 2022 to amend their complaint to disclose their identities if they choose to proceed. (Doc. 46.)
[4] Relatedly, Plaintiffs allege that "[d]ue to known inappropriate conduct of coaches and/or assistant coaches from the previous coaching regime, Defendant Frisbey promised members of the Volleyball Team that she would supervise the transition into Coach Meeks-Rydell's coaching regime to ensure that there would be no inappropriate conduct." (Doc. 31, PageID.158.) Plaintiffs do not describe the nature of the "inappropriate conduct" by the "previous regime."

injured. (Doc. 31, PageID.159-160.) They allege that she forced the players to endure extreme practices and violated rules regarding practices times. (*Id*., PageID.160-161.) They also allege that she "physically groomed and touched Plaintiffs and other volleyball players, and engaged in physical conduct rising to the level of sexual harassment and/or assault." (*Id*., PageID.161.) This includes allegations that "[w]henever the team travelled for games, Defendant Meeks-Rydell would pinch players' butts . . . as they exited the bus," she "slapped team members in the face," forced team members into "floor hugs" where team members laid on the ground while she laid on top, forced Plaintiffs "to hug her and tell her that they loved her," and would punish players if she felt she was not getting enough positive attention. (Doc. 31, PageID.161-162.)

Plaintiffs also allege that players were repeatedly getting injured and Meeks-Rydell would force the players to play with serious injuries. (Doc. 31, PageID.162.) Meeks-Rydell would conspire with Erdmann, Frisbey, Chilcoat, and Gandolfo to conceal said injuries, and/or that Erdmann, Frisbey, Chilcoat, and Gandolfo knowingly ratified said injuries. (*Id*.) According to Plaintiffs, Frisbey had knowledge of Meeks-Rydell's abuse "through direct observation, from conversations with Plaintiffs and their parents, and through conversations with Meeks-Rydell" and that she actively assisted in perpetuating, condoning, and/or encouraging the abuse. (Doc. 31, PageID.184.) Plaintiffs do not allege that Moore observed any abusive conduct, but allege that he was an appropriate person to take action in response to it, and that he "perpetuated the wrongful and illegal acts systematically heaped upon Plaintiffs by Meeks-Rydell." (Doc. 31, PageID.185.) Except for his involvement with Tipping's withdrawal from the University (described below), Plaintiffs do not describe any actions that Moore was involved in or "perpetuated."

As alleged, in early December 2020, Doe 1 and Doe 2, with their parents, informed Erdmann and Frisbey of the abuse they suffered under Meeks-Rydell. (Doc. 31, PageID.184.) The

3

amended complaint does not state what specifically was shared at that meeting, or whether this included sexual harassment or sexual abuse. Nevertheless, Plaintiffs allege that Meeks-Rydell was placed on administrative leave in January 2021, and the University announced that Meeks-Rydell was resigning from the University in February 2021. (Doc. 31, PageID.156-157, 158, 163, 184-185.) Chilcoat and Gandolfo are also no longer at the University. (Doc. 31, PageID.157.)

## II. Allegations Specific to Individual Plaintiffs.

### A. Rachael DeMarcus

Rachael DeMarcus matriculated at the University in 2018 on a full scholarship and began playing for the volleyball team in Fall 2018, before coaches Meeks-Rydell, Chilcoat, and Gandolfo were employed at USA. (Doc. 31, PageID.155.) She played under these coaches in Fall 2019, and after that season transferred to a different university. (*Id.; see also* Doc. 1, PageID.5.) DeMarcus alleges that Meeks-Rydell attempted to form an inappropriate relationship with her, that Meeks-Rydell became angry with her for not reciprocating the type of relationship she sought, and that Meeks-Rydell sent inappropriate and harassing text messages. (Doc. 31, PageID.163-167.) DeMarcus further alleges that Meeks-Rydell insisted that she play a game while injured (which she was not cleared to play and did not play), and that the next day at an airport Meeks-Rydell "slapped Plaintiff DeMarcus across her face – presumably in retaliation for being honest with the athletic trainer about her ankle injury." (Doc. 31, PageID.167-168.) DeMarcus further alleges that she was forced to play when she should have been in a concussion protocol. (Doc. 31, PageID.168-169.) In addition, DeMarcus developed Supra Ventricular Tachycardia ("SVT") that was aggravated by stress but she was allegedly coerced or forced to continue practicing and playing, but ultimately took a break from volleyball and underwent a procedure to repair the SVT. (Doc.

4

31, PageID.169.) There are no allegations that DeMarcus reported any alleged sexual harassment or abuse to any of the Defendants or to anyone else at the University.

### B. Alexis Silver

Alexis Silver matriculated at the University in summer 2018 and played on the volleyball team in Fall 2018, before Meeks-Rydell arrived. Doc. 42-1, PageID.261 ¶ 2; Doc. 31, PageID.156.) Silver alleges that she "endured significant verbal, emotional, physical, and/or sexual harassment during her time at the University as a result of the wrongful conduct of Coach Meeks-Rydell." (Doc. 31, PageID.170.) This included "breakfast club" training, forced full body contact with Meeks-Rydell, and extensive and demeaning verbal harassment. (*Id*.) Silver alleges that she suffered daily panic attacks and lost 40 pounds in one semester. (*Id*.) Allegedly she was forced to withdraw from playing volleyball and unable to continue her education at the University. (*Id*.) There are no allegations that Silver reported any alleged sexual harassment or abuse to any of the Defendants or to anyone else at the University.

In Spring 2019, Silver had limited participation in team activities, and at the end of the semester her athletics grant-in-aid was non-renewed due to a violation of team rules. (Doc. 42-1, PageID.261, ¶ 2.) Her last term at USA was the Spring 2019 semester, which ended in early May. (*Id*.) She never played a full season with coaches Meeks-Rydell or Chilcoat, who began employment at USA in January 2019, or with Gandolfo, who began employment at USA in late May 2019. (*Id*.)

### C. Caitlin Tipping

Caitlin Tipping matriculated and played on the team in 2019. (Doc. 31, PageID.156.) She left the University in early 2020. (*Id.*) Tipping alleges that she "was subjected to butt pinching by Meeks-Rydell, forced hugs by Meeks-Rydell, forced into telling Defendant Meeks-Rydell 'I love

you,'" and witnessed other harassment. (Doc. 31, PageID.171.) Meeks-Rydell also frequently swore at Tipping and forced her to play shortly after suffering a leg injury. (*Id.*) Tipping further alleges that she was compelled to withdraw from the University, and that during a meeting with Meeks-Rydell and Moore, she was told she would be fined over $6,000 for leaving the University, but that they would take care of the fine if Tipping penned a letter to the NCAA stating that she was leaving the University due to concerns about fires in Australia (where she was from) rather than the abuse she suffered. (Doc. 31, PageID.171-172.) Plaintiffs do not allege that Tipping ever reported any alleged abuse or sexual harassment before her withdrawal.

### D.   Meaghan Jones

Meaghan Jones matriculated in 2017 and left the University in 2020. (Doc. 31, PageID.156.) Jones alleges that Meeks-Rydell pinched her backside, forced hugs, and required her to tell Meeks-Rydell "I love you," and that she witnessed other harassment. (Doc. 31, PageID.175.) Jones also alleges that Meeks-Rydell accused her of faking a back injury and asthma attacks, and that she was demeaned and embarrassed by Meeks-Rydell. (*Id.*) Plaintiffs do not allege that Jones ever reported any sexual harassment or abuse to any of the Defendants or to anyone else at the University.

### E.   Hannah Kazee

Hannah Kazee matriculated and began playing on the team in 2020. (Doc. 31, PageID.156.) Kazee alleges that Meeks-Rydell pinched her backside, forced hugs, and required her to tell Meeks-Rydell "I love you," and that she witnessed other harassment. (Doc. 31, PageID.176.) Kazee also alleges that Meeks-Rydell accused her of faking a back injury and demanded that she play. (*Id.*) Kazee alleges that despite informing Meeks-Rydell that she was uncomfortable, Meeks-Rydell continued to force Kazee to hug her and participate in other physical contact, which Kazee

tried to avoid. (Doc. 31, PageID.176-177.) Kazee also alleges that she was humiliated and suffered distress because discussions with Meeks-Rydell regarding her mental and physical health were not kept private, and that her medical condition was exacerbated by the emotional stress caused by the Defendants' allegedly wrongful conduct. (Doc. 31, PageID.177.)

Kazee alleges that she and her parents had a Zoom conference with Meeks-Rydell and Frisbey in December 2020, and that Kazee and her parents "informed Defendants Frisbey of Defendant Meeks-Rydell's inappropriate conduct, in detail, towards Plaintiff Kazee and the Volleyball Team" but that Frisbey failed to take corrective action. (Doc. 31, PageID.177-178.) Kazee withdrew from the volleyball team. (Doc. 31, PageID.178.)

### F.    Hannah Johnson

Plaintiff Hannah Johnson matriculated in 2017 and left in 2020.  (Doc. 31, PageID.156.) Johnson alleges that Meeks-Rydell pinched her backside,[5] forced hugs, and required that her to tell Meeks-Rydell "I love you," and that she witnessed other harassment. (Doc. 31, PageID.178.) Johnson alleges that in February 2019 she suffered a concussion after having a volleyball spiked into her head during a volleyball drill. (Doc. 31, PageID.178-179.) Following this, Johnson's mother allegedly notified Erdmann and other (unidentified) administrators of the "highly concerning and improper practices Defendants . . . were conducting with the Volleyball Team, and how such improper practices concerned the health and safety of Plaintiff Johnson and the Volleyball Team members under Defendants." (Doc. 31, PageID.179, 183.) There are no allegations that Johnson or her mother reported any concerns of sexual harassment or sexual abuse. Johnson withdrew from the volleyball team and left the University in 2020. (*Id.*, PageID.156, 179.)

---

[5] The amended complaint states in the Johnson section that Meeks-Rydell pinched Plaintiff Jones's backside, not Johnson's. Defendants assume this allegation was meant to refer to Johnson. (*See* Doc. 31, PageID.178, at ¶ 128.)

### G.     Jane Doe 1

Plaintiff Jane Doe 1 matriculated in 2019 and is a current student at the University. (Doc. 31, PageID.156; Doc. 30, PageID.149.) Doe 1 alleges that Meeks-Rydell pinched her backside, forced hugs, and required her to tell Meeks-Rydell "I love you," and that she witnessed other harassment. (Doc. 31, PageID.179.) Doe 1 alleges that she was punished if Meeks-Rydell did not feel that Doe 1 was earnest in saying "I love you" or attempted to refuse hugs. (Doc. 31, PageID.180.) Doe 1 also alleges she was forced to endure punishments that triggered asthma attacks and Meeks-Rydell would not allow her access to her inhaler, berated her, and forced her to participate in extreme and excessive physical activity as punishment for failing to secure antennas on volleyball nets properly. (*Id*.) In December 2020, Doe 1 allegedly "expressed her concerns and complaints about Defendant Meeks-Rydell's behavior to Defendants Frisbey and Erdmann," and was told by Frisbey that "it wouldn't be the worst thing if you got kicked off the team." (Doc. 31, PageID.181.) Plaintiffs allege that Doe 1 and her parents informed Erdmann and Frisbey in December 2020 of the abuse they suffered under Meeks-Rydell. (Doc. 31, PageID.184.)

### H.     Jane Doe 2

Plaintiff Jane Doe 2 matriculated in 2020 and is a current student at the University. (Doc. 31, PageID.156; Doc. 30, PageID.149.) Doe 2 alleges that Meeks-Rydell pinched her backside, forced hugs, and required her to tell Meeks-Rydell "I love you," and that she witnessed other harassment. (Doc. 31, PageID.181.) Doe 2 alleges that "[o]n multiple occasions . . . Meeks-Rydell summoned Doe 2 to her hotel room [and] forced Doe 2 to lay in bed with her under the blankets and told Doe 2 to 'use her [Meeks-Rydell's] boobs as a pillow." (Doc. 31, PageID.182.) Doe 2 also alleges that Meeks-Rydell would kiss Doe 2 on the forehead and cheek when forcing Doe 2 to hug her. (*Id*.) Doe 2 alleges that Meeks-Rydell forced her to spend extensive time alone together,

8

often in Meeks-Rydell's residence, and "lured Doe 2 to her home under the guise of watching film of the prior volleyball games" and was not allowed to leave for extended periods of time. (Doc. 31, PageID.182.) Meeks-Rydell also allegedly "forced Doe 2 to dog sit" and "forced Doe 2 to sleep in her bed," and "observ[ed] Doe 2 via the security cameras" while Meeks-Rydell was out of town. (*Id.*) Meeks-Rydell allegedly referred to Doe 2 by names like "bitch" and "asshole." (*Id.*) Doe 2 does not allege that she informed anyone at the University of any of these allegations until December 2020, shortly before Meeks-Rydell was placed on administrative leave and then resigned from the University. (Doc. 31, PageID.184.)

## ARGUMENT

Rule 12(b)(6) of the *Federal Rules of Civil Procedure* authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. Rule 12(b)(6) is read in consideration of Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addition to containing well-pleaded factual allegations, complaints must also meet the "plausibility standard" set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This plausibility standard requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. To state a plausible claim for relief, Plaintiffs must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief

9

above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

I. **Plaintiffs Fail to State Claims Against Frisbey and Moore**.[6]

Plaintiffs allege that Defendant Meeks-Rydell engaged in physical conduct involving the Plaintiffs, but they do not allege that Frisbey or Moore personally engaged in any physical conduct with the Plaintiffs. At most, Plaintiffs allege that those two individual Defendants had knowledge of Meeks-Rydell's conduct and failed to take action to protect the Plaintiffs.

A. **Plaintiffs fail to state a § 1983 claim against Frisbey and Moore.**

Plaintiffs assert a substantive due process claim against Frisbey and Moore for a violation of bodily integrity. (Doc. 31, PageID.188-190.) "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (citation omitted), *overruled in part on other grounds, Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). "The concept of conscience-shocking conduct 'duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability.'" *Id.* "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Thus, "the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort

---

[6] Plaintiffs do not specify whether they have sued Frisbey and Moore in their official capacities, individual capacities, or both. Plaintiffs have not requested any prospective injunctive relief against either Defendant, and therefore any claims against them are assumed to be in their individual capacities. Regardless, Frisbey and Moore are immune from any individual claims asserted against them in their official capacities for money damages. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-102 (1984).

claims into federal causes of action." *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (citing *Lewis*, 523 U.S. at 848). "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" *Davis*, 555 F.3d at 982 (quoting *Lewis*, 523 U.S. at 849). Negligence or deliberate indifference, or even a simple battery, is not sufficient to allege a substantive due process claim. *Id.* at 983 (dismissing claim against coach accused of being deliberately indifferent to safety risks posed to student who died after a vigorous workout).

To state a claim under § 1983 for a violation of bodily integrity, "at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075. Here, Plaintiffs make no such allegations that Frisbey or Moore engaged in any force against the Plaintiffs.[7]

Here, at most Plaintiffs have alleged that Frisbey and Moore were deliberately indifferent to Meeks-Rydell's conduct, and that is not sufficient to state a substantive due process claim against them. *Southall v. Birmingham Jefferson Convention Ctr. Auth.*, No. 2:16-cv-1687-LSC, 2017 WL 4155100, at *6 (N.D. Ala. Sept. 19, 2017) (dismissing claim). And there are no allegations that these two Defendants "intended to injure Plaintiffs." *Id.*; *see also Long v. Murray County Sch. Dist.*, No. 4:10-cv-15-HLM, 2012 WL 2277836, at *24 (N.D. Ga. May 21, 2012) (dismissing claim because "Defendants' alleged acts of mistreatment do not suggest that

---

[7] Plaintiffs cited *Doe v. School Board of Broward County, Florida*, 604 F.3d 1248 (11th Cir. 2010) in response to the University, Erdmann, Chilcoat and Gandolfo's motion to dismiss, which was a claim for § 1983 liability based on sexual abuse. Assuming that claim was properly pled, Plaintiffs in this case do not allege that there was any personal participation by Frisbey or Moore. Nor do they allege that there was a causal connection between their actions and Meeks-Rydell's, or any sort of "policy" consistent with the alleged conduct.

11

Defendants acted with intent to injure.") There is no allegation that Frisbey or Moore engaged in corporal punishment against the Plaintiffs or made any physical contact at all with an intent to punish or injure. *Giordano v. Sch. Bd. of Lee County, Fla.*, No. 2:19-cv-439-FtM-99NPM, 2020 WL 32957, at *6 (M.D. Fla. January 2, 2020) (dismissing claim against coach who subjected decedent to rigorous exercise and failed to promptly obtain medical attention). All that is alleged is that they had actual knowledge of Meeks-Rydell's conduct, were in a position to take action, and by failing to take action, demonstrated deliberate indifference. (Doc. 31, PageID.189-190.) That is not sufficient to state a substantive due process claim, and this claim should be dismissed.

At the very least, Frisbey and Moore, as current State employees, are entitled to qualified immunity at the dismissal stage. Qualified immunity protects government officials performing discretionary functions from liability in their individual capacity if their conduct "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quotation and citation omitted). The immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Jordan v. Mosley,* 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation and citation omitted).

In order to determine whether a motion to dismiss is due to be granted on the basis of qualified immunity, a court must "determine whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting review to the four corners of the complaint." *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010). To avoid dismissal, a plaintiff's allegations must establish both (1) a constitutional violation and (2) that the violation was clearly established. *Id.* at 762. A constitutional right is clearly established when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is

doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (internal quotation marks and citation omitted).

Plaintiffs do not allege any violation of a clearly established constitutional right by Frisbey and Moore, who at most had knowledge of some of Meeks-Rydell's conduct. Given the Eleventh Circuit's precedent that deliberate indifference does not rise to the level of a substantive due process violation, *Davis*, 555 F.3d at 984, there is no alleged violation by Frisbey and Moore of a clearly established constitutional right and these Defendants are entitled to dismissal on the basis of qualified immunity.

> **B.    Plaintiffs fail to state a claim against Frisbey and Moore for assault and battery, invasion of privacy, and intentional infliction of emotional distress (outrage).**

Plaintiffs' state law claims for assault and battery, invasion of privacy, and intentional infliction of emotional distress (outrage) against Defendants Frisbey and Moore are predicated on Meeks-Rydell's alleged tortious conduct. Each of those claims are due to be dismissed against Frisbey and Moore because Plaintiffs do not allege that those individuals engaged in any conduct for which they should be liable for such torts.

To establish a claim for assault and battery, Plaintiffs must show that they were subjected to an intentional touching "conducted in a harmful or offensive manner." *Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190, 1193 (Ala. 1998). However, Plaintiffs never allege that Frisbey or Moore touched them or threatened to touch them. The only allegation with any specificity is that Frisbey conspired with Meeks-Rydell to conceal Plaintiffs' injuries; there is no allegation that she caused any injuries or that Moore was ever involved at all. Rather, Plaintiffs allege in conclusory fashion that these Defendants "countenanced and ratified the assault and battery of Plaintiffs by Meeks-

Rydell when they failed and refused to take any reasonable steps to protect Plaintiffs from the assault and battery." (Doc. 31, PageID.193.)

Likewise, Plaintiffs assert a claim for invasion of privacy, based on one of the "four distinct wrongs," "the intrusion upon the plaintiff's physical solitude or seclusion." *Norris v. Moskin Stores, Inc.,* 132 So. 2d 321, 323 (Ala. 1961); (Doc. 31, PageID.194-195.) Plaintiffs allege in this count that Frisbey and Moore "failed and refused to take any reasonable steps to protect Plaintiffs from the invasion of privacy." (Doc. 31, PageID.194.) To constitute an invasion of privacy under such circumstances, "there must be something in the nature of prying or intrusion." *Busby v. Truwall Systems Corp.*, 551 So. 2d 322, 323-324 (Ala. 1989) (citation and internal quotations omitted). Here, there are no allegations that Frisbey or Moore engaged in any prying or intrusion against the Plaintiffs.

Finally, Plaintiffs allege that Frisbey and Moore's "deliberate indifference to Defendant Meeks-Rydell's continuous extreme and outrageous conduct . . . itself constitutes extreme and outrageous conduct." (Doc. 31, PageID.195.) But Plaintiffs make no allegations that Frisbey or Moore engaged in any tortious action themselves, much less anything approaching extreme or outrageous conduct.

While courts have, under certain circumstances, found an <u>employer</u> liable for the conduct of its employees on a ratification theory, "no authority exists for the proposition that liability for an employee's alleged tortious acts may be imputed to an individual *supervisor* or *co-employee*, who merely ratifies" the alleged acts of another employee. *Lynn v. United Technologies Corp., Inc.*, 916 F. Supp. 1217, 1220 (M.D. Ala. 1996) (dismissing assault and battery, invasion of privacy and outrage claims against co-worker) (emphasis in original); *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997) ("[W]e find no authority that would support a finding of an agency

14

relationship between co-employees.") (granting summary judgment to supervisor for battery and invasion of privacy claims), *overruled on other grounds, Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998). "Ratification is a doctrine of agency, and, where there is no agency and no attempt to act as agent, there is nothing to which the doctrine can apply." *Exchange Security Bank v. King*, 301 So. 2d 193, 196 (Ala. Civ. App. 1974). Frisbey and Moore, as University athletic department administrators, do not hold an agency relationship with Meeks-Rydell, and therefore cannot be personally liable for her alleged torts.

Plaintiffs are therefore unable to impute Meeks-Rydell's alleged tortious acts to Frisbey and Moore. *Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006) ("[B]ecause co-employees do not individually agree to act on one another's behalf, their relationship to one another is not consensual. Therefore, as a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates.") And Plaintiffs have not alleged that these Defendants personally "engaged in any conduct necessary to establish the elements of those state law claims." *Lynn*, 916 F. Supp. at 1220.

Plaintiffs have argued in response to the University, Erdmann, Chilcoat and Gandolfo's motion to dismiss that the individual Defendants owed a duty to the Plaintiffs for which there can be tort liability because of a "special relationship or circumstances." (Doc. 48, PageID.359-360.) The general rule that "absent a special relationship[8] or special circumstances, a person has no duty to protect another from criminal acts of a third person" assumes that there was a duty to be imputed on the defendant in question, and that a criminal act took place. *Emery v. Talladega Coll.*, 688 F. App'x 727, 731 (11th Cir. 2017) (emphasis omitted). Neither of those are alleged here. Most importantly, Plaintiffs' claims for (1) assault and battery, (2) invasion of privacy, and (3)

---

[8] Plaintiffs do not argue that a special "relationship" applied, only special "circumstances."

15

intentional infliction of emotional distress do not involve the existence or breach of any "duty," but rather an affirmative act by the defendant, which is not what is alleged here against Frisbey and Moore. Nor do Plaintiffs allege knowledge or probability of an underlying criminal act. Even if there was such a cause of action, they cannot allege special relationships or circumstances here because criminal conduct was not foreseeable, there was no "specialized knowledge" of criminal activity, and the criminal conduct was not one of *probability*. *Id*. Accordingly, Plaintiffs' tort claims against Frisbey and Moore fail as a matter of law and are due to be dismissed.

### D. Frisbey and Moore are immune from the state law claims.

As an additional ground for dismissal, Frisbey and Moore are State employees who are entitled to immunity from state law claims. *Barnhart v. Ingalls*, 275 So. 3d 1112, 1125–27 (Ala. 2018); *Ex parte Cooper*, No. 1200269, __ So. 3d __, 2021 WL 4471018 (Ala. Sept. 30, 2021); *see also Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013); *Taylor v. Troy St. Univ.*, 437 So. 2d 472, 474 (Ala. 1983). To determine if a claim is effectively against the State of Alabama, courts consider several factors, including:

> whether 'a result favorable to the plaintiff would directly affect a contract or property right of the State,' *Mitchell* [*v. Davis*], 598 So. 2d [801,] 806 [(Ala. 1992)], whether the defendant is simply a 'conduit' through which the plaintiff seeks recovery of damages from the State, *Barnes v. Dale*, 530 So. 2d 770, 784 (Ala. 1988), and whether 'a judgment against the officer would directly affect the financial status of the State treasury,' *Lyons* [*v. River Road Constr., Inc.*], 858 So. 2d [257] at 261 [(Ala. 2003)]."

*Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004). When a plaintiff must demonstrate that a government official owed a duty to him, the claim likely is against the State if the duty arises only from the defendant's position as a state officer. *Barnhart*, 275 So. 3d at 1126–27 (holding that state officials were entitled to Section 14 immunity for negligence and breach-of-fiduciary claims against them concerning their failure to provide proper benefits to employees because the

16

government officials "had no duties in their individual capacities to give effect to the benefit statutes; rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State.") (emphasis in *Barnhart*).

Any duties owed by Frisbey and Moore to the Plaintiffs arose only from their positions as University athletic department administrators. Plaintiffs allege that they "countenanced and ratified" Meeks-Rydell's actions, which can only come from their roles in the athletic department. *Ex parte Cooper*, 2021 WL 4471018 (claim is one against the State when the duty exists solely because of defendant's official position) (granting petition for writ of mandamus to dismiss claim). Because those claims are effectively against the State, and not the individual defendants, the individual defendants are entitled to immunity from Plaintiffs' state law claims. *Doe v. Huntsville City Sch. Bd. of Educ.*, No. 5:21-CV-00110-MHH, __ F. Supp. 3d __, 2021 WL 2716117, at *6 (N.D. Ala. July 1, 2021) (dismissing claims).

## II. All But One of Alexis Silver's Claims are Barred by the Statutes of Limitations.

In addition to the reasons set forth above for why Plaintiffs' claims against Frisbey and Moore are due to be dismissed, all of Plaintiff Alexis Silver's claims except for assault and battery are due to be dismissed because they are barred by a two-year statute of limitations.

Plaintiffs' § 1983, invasion of privacy, and outrage claims have a two-year statute of limitations. *Sadeghian v. Univ. of S. Ala.*, No. 18-9-JB-B, 2018 WL 7106981, at *18 (S.D. Ala. Dec. 4, 2018) (§ 1983); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1363 (M.D. Ala. 1999) (invasion of privacy); *Carter v. Countrywide Home Loans, Inc.*, No. 3:10cv503-WHA-CSC, 2010 WL 4269149, at *6 (M.D. Ala. Oct. 28, 2010) (outrage).

Silver's claims are more than two years old because she left the University more than two years before the complaint was filed. She matriculated at the University in 2018 and began playing

for the volleyball team in 2018. (Doc. 31, PageID.156.) The amended complaint omits the month or day in 2019 that Silver left the University, but given that her complaint was not filed until August 31, 2021, on the face of the amended complaint she has not established that her lawsuit was filed within two years. *Tannehill v. Wilkie*, No. 20-105-TFM-C, 2021 WL 1624275, at *5 (S.D. Ala. Jan. 25, 2021) ("A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted . . . if it is apparent from the face of the complaint that the claim is time-barred.") Moreover, as set forth in the Declaration of Joel Erdmann, Silver cannot dispute that her last term at the University was the Spring 2019 semester, which she completed by the beginning of May 2019. (Doc. 42-1, PageID.262 ¶ 2.) Therefore, any alleged injury to Silver occurred not later than May 2019, but this lawsuit was not filed until August 2021, more than two years later. All of Silver's claims, except for the assault and battery claim (which carries a six-year statute of limitations), are due to be dismissed or summary judgment granted.[9]

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Chris Moore and Jinni Frisbey are due to be dismissed.

---

[9] To the extent necessary to dismiss Silver's claims based on the statute of limitations, Defendants request that the Court convert the motion to dismiss to a motion for summary judgment and provide the appropriate notice to consider Erdmann's declaration as undisputed evidence of the timing of Silver's exit from the University, and therefore the ending of the timeframe of any injury alleged. *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627-28 (11th Cir. 2008) (requiring the court to provide the parties ten-days' notice that the motion will be converted). No discovery is needed because the dates of Silver's attendance at the University are personally known to her.

Respectfully submitted,

 */s/ Windy C. Bitzer*
 WINDY C. BITZER (BITZW7315)
 CHRISTINE HARDING HART (HARTC5687)
 *Attorneys for Defendants University of South Alabama, Joel Erdmann, Rob Chilcoat, Patricia Gandolfo, Jinni Frisbey and Chris Moore*

OF COUNSEL:
HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
wbitzer@handfirm.com
chart@handfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2022, the foregoing document was filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following counsel of record:

Diandra S. Debrosse Zimmerman, Esq.
Eli J. Hare, Esq.
DiCello Levitt Gutzler LLC
420 20th Street North, Suite 2525
Birmingham, AL 35203
fu@dicellolevitt.com
ehare@dicellolevitt.com

Kenneth P. Abbarno, Esq.
DiCello Levitt Gutzler LLC
Western Reserve Law Building
7556 Mentor Avenue
Mentor, OH 44060
kabbarno@dicellolevitt.com

Celia J. Collins, Esq.
Elizabeth Rehm, Esq.
Johnston Adams LLC
1 St. Louis Centre
1 St. Louis Street, Suite 4000
Mobile, Alabama 36602
cjc@johnstoneadams.com
edr@johnstoneadams.com

Mary E. Pilcher, Esq.
Stein & Pilcher, LLC
P.O. Box 602
Fairhope, Alabama 36533-0602
mpilcher@mobilebaylaw.com


 */s/ Windy C. Bitzer*