**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

RACHEL DEMARCUS, *et al.*,                  *
                                            *
     **Plaintiffs,**                        *
                                            *
vs.                                         * CIVIL ACTION NO. 21-00380-KD-B
                                            *
UNIVERSITY OF SOUTH ALABAMA,                *
*et al.*,                                   *
                                            *
     **Defendants.**                        *

<u>ORDER</u>

This action is before the Court on Defendants the University of South Alabama ("University" or "USA"), Joel Erdmann, Jinni Frisbey, Chris Moore, Rob Chilcoat and Patricia Gandolfo's (collectively referenced as "University Defendants") motion to dismiss Plaintiffs' Third Amended Complaint (Doc. 66) and Defendant Alexis Meeks-Rydell's motion to dismiss Plaintiffs' Third Amended Complaint. (Doc. 68). The motions have been fully briefed and are ripe for resolution. Upon consideration of all matters presented and for the specific reasons stated herein, the undersigned **GRANTS** Defendants' motions to dismiss. Plaintiffs' federal claims are due to be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

I.   **RELEVANT BACKGROUND**[1]

Plaintiffs, 8 former and current volleyball players for the University of South Alabama, are suing the University and various defendants based on alleged sexual, physical, and emotional harassment and abuse by Defendant Alexis Meeks-Rydell during her 2019-2020 tenure as the Women's Volleyball coach at USA. (Doc. 64). Plaintiffs' operative pleading before the Court is their Third Amended Complaint, which was filed after the Court determined that Plaintiffs' second amended complaint was an impermissible shotgun pleading. (Doc. 62). Defendants filed motions seeking the dismissal of Plaintiffs' second amended complaint, and in a Report and Recommendation issued on May 17, 2022 (Doc. 59), the Magistrate Judge determined that the second amended complaint improperly incorporated all previous paragraphs into each count, repeatedly combined Plaintiffs' distinct claims into a single cause of action against all Defendants thereby making it difficult to isolate the factual allegations intended to support each Plaintiffs' claims (often against multiple Defendants), and included labels and conclusions that did not add factual substance to the complaint. (Id.) It was thus recommended that Plaintiff's second amended complaint be dismissed without prejudice as a shotgun  pleading, and that Plaintiffs be ordered to file a third amended complaint

---

[1] The full procedural background is set forth in the Report and Recommendation dated May 17, 2022, (Doc. 59).

that corrected the noted deficiencies. (Id.). The Report and Recommendation was adopted, and Plaintiffs were directed to file "a third amended complaint that is not a shotgun pleading, i.e., a more definite statement". (Doc. 62).

Per the Court's directive, Plaintiffs filed their third amended complaint, which is the operative pleading in this case. In paragraphs 35 through 52 of their third amended complaint, Plaintiffs allege that during her 2019-2020 tenure as the head Women's Volleyball coach at USA, Defendant Alexis Meeks-Rydell engaged in sexual harassment and other physical, verbal, and psychological abuse of the players, including Plaintiffs and that the University Defendants were aware of the alleged abuse and failed to take action to prevent it. (Doc. 64 at 9). According to Plaintiffs, Coach Meeks-Rydell "created a climate of fear and intimidation" in which she regularly "swore" at Plaintiffs and made abusive comments to them", accused them of faking injuries, forced them to play through serious medical conditions and imposed punishment in violation of NCAA rules, such as morning breakfast clubs which consisted of 4:00 a.m. practice drills that would continue until players vomited, passed out or cried due to inability to continue. (Id. at 10-11). Plaintiffs also generally allege that Coach Meeks-Rydell "physically and/or sexually groomed and inappropriately touched" volleyball players, including the Plaintiffs, and engaged in physical and sexual conduct rising to

the level of sexual harassment and/or sexual assault, and list as examples:

1. Whenever the team travelled for games, Coach Meeks-Rydell would pinch players' butts, as they exited the bus;

2. Coach Meeks-Rydell forced the players, including the Plaintiffs, into "floor hugs" where she would force players to lay on the ground while she laid on top of the players;

3. Coach Meeks-Rydell forced players, including Plaintiffs, to hug her and tell her that they loved her in text messages and in person;

4. Coach Meeks-Rydell would limit playing time or force the team, including Plaintiffs, to participate in intense corporal punishment such as breakfast clubs if she perceived that she was not getting enough positive attention or that that Plaintiffs were not submitting to her inappropriate sexual behavior.

(Id. at 11-12).

Plaintiffs also generally allege that several university officials including Defendant Joel Erdmann, who served as USA Athletic Director and as Coach Meeks-Rydell's direct supervisor, Defendant Jinni Frisbey, who served as USA Associate Athletic Director and as Coach Meeks-Rydell's director supervisor, Defendant Chris Moore, who served as USA Associate Athletic Director and as Coach Meeks-Rydell's direct supervisor, Defendant

Rob Chilcoat, who served as USA Assistant Coach of the volleyball team, and Defendant Patricia Galdolf, who served as USA Assistant Coach of the volleyball team, all had direct knowledge of Coach Meeks-Rydell's sexual harassment, and physical and emotional abuse of players, including Plaintiffs, and had the authority to take corrective action, but failed to do so. (Id. at 6-7, 12). According to Plaintiffs, these Defendants also colluded with Coach Meeks-Rydell to conceal Plaintiffs' injuries and/or knowingly ratified the concealment of said injuries. (Id. at 12).  Plaintiffs also contend, upon "information and belief" that Coach Meeks-Rydell had a reputation for instilling a pattern and practice of physical and emotional abuse and/or sexual harassment at her previous jobs, including while employed as head coach at the University of West Alabama, and that Defendants had constructive and or actual knowledge of Meeks-Rydell history of engaging in sexual harassment as well as physical mental and emotional abuse of college athletes, yet recklessly and/or with reckless indifference hired and continued to employ her. (Id. at 35).

Additionally, the third amended complaint includes specific factual allegations asserted by each individual Plaintiff as follows:

**A. Rachel DeMarcus**

Plaintiff Rachel DeMarcus enrolled at USA with a full volleyball scholarship in 2018. (Id. at 4).  She played on the

volleyball team both before and during Coach Meeks-Rydell's tenure as the Women's head volleyball coach in 2019. (Id. at 4, 8). DeMarcus adopts the general allegations in the third amended complaint, and expressly alleges that she was subjected to physical and emotional abuse and sexual harassment by Coach Meeks-Rydell including butt-pinching, forced hugs, floor hugs, breakfast clubs, and constantly being forced to tell Coach Meeks-Rydell that she loved her. (Id. at 13). DeMarcus also asserts that Coach Meeks-Rydell routinely sought to groom her to form an inappropriate sexual relationship with her, and sought to retaliate against and manipulate her for not reciprocating the type of relationship Meeks-Rydell sought. According to DeMarcus, she was constantly required to tell Coach Meeks-Rydell "I love you" and Coach Meeks-Rydell repeatedly sent her inappropriate and sexually harassing text messages which demanded that DeMarcus have a relationship with her and tell her that she loved her.[2] DeMarcus also asserts that Coach Meeks-Rydell manipulated and/or forced her to spend

---

[2] DeMarcus included in the complaint what she contends were text messages between herself and Coach Meeks-Rydell dated April 14, 2019 and September 30, 2019. (Id. at 14-15). On April 14, 2019, Coach Meeks-Rydell is alleged to have sent DeMarcus a text asking "Why do you hate me?", followed by a series of emojis. (Id.). Also, on September 30, 2019, Coach Meeks-Rydell is alleged to have sent a text to DeMarcus asking, "Do you still love me?", and stating that I am "going to be harder on you than everyone else and there are days where I am going to upset you." (Id.).

money purchasing coffee and other items for Meeks-Rydell. (Id. at 13-17).

DeMarcus also contends that Coach Meeks-Rydell tried to force her to play in the first game of the season on August 30, 2019 even though she had suffered a high ankle sprain (on April 18, 2019) and was not physically cleared to play, and that on August 31, 2019, Coach Meeks-Rydell slapped her across the face while in the Hartsfield-Jackson Airport, presumably in retaliation for DeMarcus being honest with the athletic trainer about the extent of her ankle injury when Coach Meeks-Rydell had instructed her to conceal the severity of her injury from the athletic trainer. (Id. at 17-18).

DeMarcus contends that after she was hit in the head by another player's knee during a September 14, 2019 volleyball game, she informed Coach Meeks-Rydell that she could not see well and was dizzy; however, Coach Meeks-Rydell instructed DeMarcus to play notwithstanding her  head injury, and also ordered her to conceal the extent of the injury from the athletic trainer because concussion protocols would have required to DeMarcus to refrain from playing for a number of weeks. Demarcus asserts that days following the game, the athletic director informed Coach Meeks-Rydell that DeMarcus had suffered a severe concussion, and in response, Meeks-Rydell denied any knowledge of the injury. She further alleges that the athletic trainer informed Defendant

7

Frisbey of DeMarcus' injury and of the coaching staff's indifference to DeMarcus' health and safety. (Id. at 18-19).

DeMarcus asserts that as result of the concussion, she had impaired vision, constant headaches, and a severe loss of appetite. She further contends that shortly after Meeks-Rydell began her abusive coaching tactics, she developed symptoms of Supra Ventricular Tachycardia ("SVT"), and notwithstanding the concern of team physicians, Coach Meeks-Rydell coerced and/or forced her to engage in breakfast clubs, practice, and games. (Id. at 19). According to DeMarcus, as a result of the severity of her SVT, she had to undergo significant testing, wear heart monitors, take a break from volleyball and ultimately undergo an ablation procedure to address the SVT.  DeMarcus contends that all of these events resulted from Coach Meeks-Rydell's wrongful conduct and that the University Defendants' knowing failure to take corrective action, caused further mental, emotional, and physical trauma. DeMarcus asserts that on December 3, 2019, she informed Coach Meeks-Rydell that she was transferring from USA. (Id. at 19-20).

**B. Alexis Silver**

Plaintiff Alexis Silver enrolled at USA in 2018 and played on the volleyball team under Meeks-Rydell, who was announced as the Women's head volleyball coach on December 31, 2018. (Id. at 4,8). Silver adopts the general allegations in the third amended complaint, and expressly alleges that she was subjected to butt-

pinching, forced hugs, floor hugs, breakfast clubs, and that she was forced to tell Coach Meeks-Rydell that she loved her. (Id. at 20). Silver contends that as a result of the physical and emotional abuse and sexual harassment by Coach Meeks-Rydell, she suffered daily panic attacks and suffered a 40-pound wight loss in one semester. (Id. at 21). According to Silver, as a result of Coach Meeks-Rydell's persistent physical and emotional abuse and sexual harassment and the University Defendants' knowing failure to take corrective action, she sustained mental, emotional, and physical injury, and was forced to leave the team and USA. (Id.)

**C. Caitlin Tipping**

Plaintiff Caitlin Tipping, a citizen of Australia, enrolled at USA in 2019 and played on the volleyball team under Meeks-Rydell, who was announced as the Women's head volleyball coach on December 31, 2018. (Id. at 4, 8). Tipping adopts the general allegations in the third amended complaint, and expressly alleges that she was regularly sexually harassed by Coach Meeks-Rydell, including butt-pinching and forced hugs, and she was forced to tell Coach Meeks-Rydell that she loved her. According to Tipping, Coach Meeks-Rydell frequently swore at her, and she forced her to return to play within a week of her suffering a fracture and ligament damage to her leg. Tipping also asserts Coach Meeks-Rydell verbally abused her and accused her of "faking her injuries". (Id. at 22). Tipping contends that due to Coach Meeks-Rydell's

persistent wrongful sexual harassment and abusive conduct, and the University Defendants' knowing failure to take corrective action, she sustained mental, emotional and physical injury, and was forced to leave the team and USA. (Id. at 22).  She further asserts that upon learning that she planned to withdraw from USA due to Defendants' wrongful conduct, Defendants Chilcoat, Moore and Meeks-Rydell scheduled a meeting with her in January 2020. (Id.) Tipping asserts that Defendants Moore and Coach Meeks-Rydell sought to intimate and manipulate her by falsely declaring that she would be fined over $6,000 for leaving  USA, and that in an effort to perpetuate the physical and emotional abuse and sexual harassment and conceal the wrongful conduct from the NCAA, Defendants Moore and Coach Meeks-Rydell convinced her that they would take care of the falsely manufactured "fine" if she would write a letter to the NCAA stating that she was leaving USA due to concerns about fires in Australia rather than the physical, emotional and sexual abuse and harassment she suffered as a result of Defendants' wrongful and illegal conduct. (Id.).  Tipping avers that under emotional distress, she provided the requested letter to the NCAA. (Id. at 23). Tipping includes in the third amended complaint alleged text messages between herself and Defendants Chilcoat and Coach Meeks-Rydell.  (Id. at 23-25).  She left USA in 2020.

### D. Meagan Jones

Plaintiff Meagan Jones enrolled at USA in 2017 and played on the volleyball team both before and during Meeks-Rydell's tenure as the Women's head volleyball coach in 2019. (Id. at 4, 8). Jones adopts the general allegations in the third amended complaint, and expressly alleges that Coach Meeks-Rydell sexually harassed her by regularly pinching her butt, forcing Jones to hug her, forcing Jones to have full body contact with her, and forcing Jones to tell Defendant Coach Meeks-Rydell that she loved her. (Id. at 20). Jones also asserts that she was subjected to physical and emotional abuse and corporal punishment, including breakfast clubs and extensive and demeaning verbal abuse. (Id. at 26). According to Jones, Coach Meeks-Rydell routinely accused her of faking a back injury and asthma attacks, and on one occasion forced her to run extra sprints for attempting to retrieve her inhaler during an asthma attack. (Id. at 26). Jones contends that a result of Coach Meeks-Rydell's persistent wrongful sexual harassment and abusive conduct, and the University Defendants' knowing failure to take corrective action, she sustained mental, emotional, and physical injury, and was forced to leave the team and USA in 2020. (Id. at 4, 27).

### E. Hannah Kazee

Plaintiff Hannah Kazee enrolled at USA in 2020 and played on the volleyball team during Meeks-Rydell's tenure as the Women's

head volleyball coach. (Id. at 5, 8). Kazee adopts the general allegations in the third amended complaint, and expressly alleges that Coach Meeks-Rydell regularly sexually harassed her by pinching her butt, forcing Kazee to hug her, forcing Kazee to have unwanted full body contact with her, and forcing Jones to tell Defendant Meeks-Rydell that she loved her. (Id. at 27). According to Kazee, when she advised Coach Meeks-Rydell that the inappropriate touching made her feel uncomfortable and tried to avoid it, Coach Meeks-Rydell retaliated through reduced playing time and psychological punishment. (Id. at 28). She further contends that Coach Meeks-Rydell accused her of faking a back injury and demanded that she play through the injury, and also routinely referred to her as "crazy" notwithstanding her knowledge that Kazee was taking anti-depressant medication. (Id.) Kazee also asserts that Coach Meeks-Rydell encouraged her to speak privately with her regarding her medical conditions and despite assuring Kazee that their conversations would remain private, Coach Meeks-Rydell publicly informed the entire volleyball team of the confidential conversions. (Id.)

Kazee asserts that she was in extreme physical pain and unable to walk off the volleyball court in October 2020, that Defendants Coach Meeks-Rydell and Chilcoat yelled at her and instructed her to leave the gym, that she was unable to walk and thus was forced to crawl out of the gym and to the training room where she was

12

denied medical attention. According to Kazee, her mother transported her to a nearby hospital where she was bedbound and unable to move for two weeks. (Id. at 29). Kazee asserts that she and her parents had a conference via zoom with Defendants Frisbey and Coach Meeks-Rydell in December of 2020, and during the conference, she and her parents informed Frisbey of Coach Meeks-Rydell's "inappropriate conduct, in detail, towards Kazee and the team. Specifically, Plaintiff Kazee detailed the circumstances that led to her October 2020 hospitalization-where coaching staff told her to "suck it up or get out" and denied her medical attention." (Id.) According to Kazee, during the conference, Frisbey also witnessed Meeks-Rydell's inappropriate and irrational anger toward Kazee's mother for "unfriending" her on Facebook. (Id.) Kazee asserts that as Coach Meeks-Rydell's direct supervisor, Frisbey had authority to take corrective action and failed to do so. She further asserts that as a result of Coach Meeks-Rydell's sexual harassment and abusive conduct towards her, and the University Defendants' knowing failure to take corrective action, she sustained mental, emotional, and physical injury, and was forced to leave the team and USA in 2020. (Id. at 5, 29).

**F. Hannah Johnson**

Plaintiff Hannah Johnson enrolled at USA in 2017 and played on the volleyball team both before and during Meeks-Rydell's tenure as the Women's head volleyball coach. (Id. at 5, 8). Johnson

adopts the general allegations in the third amended complaint, and expressly alleges that Coach Meeks-Rydell regularly sexually harassed her by pinching her butt, forcing Johnson to hug her, forcing Johnson to have unwanted full body contact with her, and forcing Johnson to tell Coach Meeks-Rydell that she loved her. (Id. at 30). Johnson further asserts that she was routinely subjected to other abuse and corporal punishment including, but not limited to, breakfast clubs, physical and mental abuse, being required to play injured and extensive and demeaning verbal harassment. (Id.)

According to Johnson, in the spring of 2019, Coach Meeks-Rydell and Chilcoat instituted a practice drill whereby they would spike balls towards the faces of the volleyball team members.  In February 2019, Johnson suffered a concussion after Defendant Chilcoat spiked a ball into her head during one of the drills. Following Jones' concussion, her mother contacted Frisbey and other members of the University's Administration to notify them of the "highly concerning and improper practices Meeks-Rydell, Chilcoat, and Gandolfo were conducting with the Volleyball Team, and how such improper practices concerned the health and safety of Johnson and the Volleyball Team Members under Defendants." (Id. at 30-31).  Johnson asserts that at that time, Erdmann and the University were on notice of Coach Meeks-Rydell's conduct. (Id. at 31).  Johnson further asserts that due to Coach Meeks-Rydell's pervasive harassment and abuse and the University Defendants'

knowing failure to put an end to that harassment and abuse, she left USA in 2020. (Id. at 5).

**G. Hannah Maddux**

Plaintiff Hannah Maddux enrolled at USA in 2019 and played on the volleyball team during Meeks-Rydell's tenure as the Women's head volleyball coach. (Id. at 5, 8). Maddux adopts the general allegations in the third amended complaint, and expressly alleges that Coach Meeks-Rydell regularly subjected her to unwanted sexual harassment by pinching her butt, forcing Maddux to hug her, forcing Maddux to have unwanted full body contact with her, and forcing Maddux to tell Coach Meeks-Rydell that she loved her. (Id. at 31-32). Maddux contends that Coach Meeks-Rydell retaliated against her by not putting her in games if Meeks-Rydell felt she was not being earnest in saying "I love you" or if Maddux attempted to refuse hugs from Coach Meeks-Rydell. (Id.)

Maddux further asserts that she was subjected to physical and emotional abuse and corporal punishment, including, but not limited to breakfast clubs, extreme physical activity, and extensive and demeaning verbal harassment. (Id. at 32). According to Maddux, although she would be grasping for air, Coach Meeks-Rydell berated her and would not allow her to get her inhaler. Additionally, on an occasion when Maddux was vomiting and experiencing a nosebleed, Coach Meeks-Rydell was outside banging on the door and screaming that Maddux could forget about being

captain, and, she ordered Maddux to return to the gym immediately. (Id. at 33). Maddux avers that in December 2020, she and Plaintiff Soboleski expressed concerns and complaints about Coach Meeks-Rydell's physical, emotional and sexual abuse to Frisbey and Erdman. (Id.) Maddux contends that when she advised Frisbey of her concern about what would happen if Coach Meeks-Rydell learned of her complaints to Frisby and Erdmann, Frisby responded with deliberate inference by stating "it wouldn't be the worst thing if you got kicked off the team". (Id.)

### H. Maddie Soboleski

Plaintiff Maddie Soboleski enrolled at USA in 2020 and played on the volleyball team during Meeks-Rydell's tenure as the Women's head volleyball coach. (Id. at 5, 8). Soboleski adopts the general allegations in the third amended complaint, and expressly alleges that Coach Meeks-Rydell regularly subjected her to unwanted sexual harassment by pinching her butt, forcing Soboleski to hug her, forcing Soboleski to have unwanted full body contact with her, kissing Soboleski on the forehead and cheeks against her will, and forcing Soboleski to tell Coach Meeks-Rydell that she loved her. (Id. at 33-34). Soboleski further asserts that Coach Meeks-Rydell subjected her to physical and emotional abuse and corporal punishment, including, but not limited to breakfast clubs, extreme physical activity, and extensive and demeaning verbal harassment. (Id. at 34).

Soboleski asserts that on multiple occasions while traveling for away games, Coach Meeks-Rydell summoned her to her hotel room to engage in sexual conduct and on one occasion, Meeks-Rydell forced Soboleski to lay in bed with her under the blankets and told her to use Coach Meeks-Rydell's boobs as a pillow.  (Id.) According to Soboleski, Coach Meeks-Rydell sought to groom her to be receptive to her unwanted sexual conduct, by forcing Soboleski to spend extensive time alone with her at Coach Meeks-Rydell's residence under the guise of watching film. Sobolenski asserts that on one occasion, she was not allowed to leave Coach Meeks-Rydell's home for eight hours, and that Coach Meeks-Rydell forced her to dog sit for her while she was out of town. (Id.)  Soboleski asserts that while dog-sitting, Coach Meeks-Rydell forced her to sleep in her bed, and invaded Soboleski's privacy by observing her via the home's security cameras without Soboleski's knowledge. Soboleski also contends that Coach Meeks-Rydell consistently referred to her as "bitch" and "asshole", and that she suffered severe mental and emotional injury as a result of the physical and emotional abuse and sexual harassment she endured. (Id.)  Soboleski asserts that she informed Defendants Erdmann and Frisbey of this conduct in December 2020. (Id. at 34).

Relying on their general and specific factual allegations, each of the Plaintiffs have asserted a Title IX claim against USA. The Plaintiffs have also asserted § 1983 substantive due process

claims against Defendants Meeks-Rydell, Erdmann, Chilcoat Gandolfo, Frisbey and Moore.  Additionally, the Plaintiffs have asserted state law claims, namely assault and battery, invasion of privacy, and outrage against Defendants Meeks-Rydell, Erdmann, Chilcoat Gandolfo, Frisbey and Moore.  Finally, Plaintiffs Demarcus, Silver and Tipping have asserted breach of contract claims against USA.

**Defendants' Motions to Dismiss**

Currently pending before the Court is the USA Defendants' motion to dismiss Plaintiffs' third amended complaint, and Defendant Coach Meeks-Rydell's motion to dismiss Plaintiffs' third amended complaint. (Docs. 66, 68).  In the motion filed by the USA Defendants, they argue that Plaintiffs' third amended complaint should be stricken because it exceeds the scope of the Court's order which directed Plaintiffs to file an amended complaint. (Doc. 66 at 9-10).  According to the USA Defendants, Plaintiffs have improperly reasserted breach of contract claims against USA because while breach of contract claims were included in Plaintiffs' amended complaint, they were omitted from Plaintiffs' second amended complaint. (Id.)

They further assert that Plaintiffs' second amended complaint did not include a 1983 substantive due process claim against Coach Meeks-Rydell, yet Plaintiffs have asserted said claim in their third amended complaint without seeking leave of Court.  (Id.) The USA Defendants further assert that USA is immune from all

claims except Title IX, that Plaintiffs have failed to state a Title IX deliberate indifference claim against USA, and that Plaintiffs cannot recover punitive or emotional distress damages under Title IX. (Id. at 10-20). Additionally, the USA Defendants assert that Plaintiffs have failed to state a 1983 substantive due process claims against Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo, and that these Defendants are entitled to qualified immunity. (Id. at 21-26). They also contend that Plaintiffs have failed to state assault and battery, invasion of privacy and intentional infliction of emotional distress claims against Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo. (Id. at 26-30). Finally, the USA Defendants allege that Plaintiff Silver's claims are barred by the statute of limitations. (Id. at 29).

In Coach Meeks-Rydell's motion to dismiss (Doc. 68), she argues that Plaintiffs' third amended complaint is still a shotgun pleading and is thus due to be dismissed. (Id. at 2). Coach Meeks-Rydell further argues that Plaintiffs' substantive due process claim against her should be stricken because it was not included in Plaintiffs' second amended complaint; thus, it is beyond the scope of the Court's June 8, 2022 order which directed Plaintiffs to correct shotgun pleading deficiencies. (Id. at 7). Coach Meeks-Rydell also argues that she is entitled to qualified immunity with respect to Plaintiff's section 1983 claim, and that

Plaintiffs have failed to state a 1983 substantive due process claim against her. (Id. at 7-13).

Additionally, Coach Meeks-Rydell contends that she is entitled to qualified immunity or state agent immunity with respect to Plaintiffs' state law claims, and that Plaintiffs have failed to state claims against her for assault and battery, invasion of privacy and emotional distress. (Id. at 13-19). Finally, Coach Meeks-Rydell asserts that Plaintiff Silver's claims for invasion of privacy and emotional distress are barred by the statute of limitations. (Id. at 19-20).

## II.   <u>STANDARD OF REVIEW</u>

Rule 8(a)(b) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed 929 (2007) (citation omitted). A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.

To survive a motion to dismiss, the factual allegations must be "plausible" and must be enough to raise a right to relief beyond the speculative level." <u>Id.</u> at 555. <u>See also</u> <u>Edwards v. Prime,</u>

Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation remarks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true, and take them in the light most favorable to the plaintiffs. Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but [l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted); see also Doe v Samford Univ., 29 F.4th 675, 687-688(11th Cir. 2022) (the plaintiff's allegations that an investigative report contained "prejudicial" and "inflammatory" statements about him are "not entitled to the assumption of truth" because these allegations are "labels" and "[un]supported by factual allegations." (citations omitted).

When considering motions to dismiss, the Court engages in a two-step approach: "1) eliminate any allegations in the complaint

that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

## III. **DISCUSSION**

As noted, Defendants contend that Plaintiffs third amended complaint does not comply with and goes beyond the scope of the Court's pleading directives and is subject to dismissal under Fed. R. Civ. P. 12(b)(6). The Court will first address Defendants' assertions that Plaintiffs have failed to comply with the Court's pleading directives, and will then address the Rule 12(b) arguments.

### A. **The Court's Pleading Directives**

Defendant Meeks-Rydell asserts that Plaintiffs' third amended complaint should be stricken because it still constitutes a "shotgun" pleading, while the University Defendants complain that Plaintiffs' latest complaint is replete with labels and conclusory statements (Doc. 66 at 10; Doc. 68 at 2-6). Upon review of

Plaintiffs' third amended complaint, there is no question that the complaint is not the model of clarity.  It is indeed replete with conclusory assertions which fall short of being "facially plausible", and which unnecessarily increase the length of the pleading.  Also, while Plaintiffs' third amended complaint does not incorporate *every* previous paragraph into each new count, it still incorporates a myriad of the same factual allegations to support nearly all of the claims against each Defendant. (Doc. 66 at 10).

Notwithstanding, the third amended cannot be uniformly dismissed as a shotgun pleading because it is not "virtually impossible" to discern which factual allegations support the various claims of each Plaintiff.  Inform Inc. v. Google LLC, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022) (finding that while the amended complaint displayed some of the characteristics of a shotgun pleading, it gave defendants' adequate notice of claims against them) (citing Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)).  This is particularly true where the Plaintiffs are contending that in many instances, they were all subjected to the same alleged wrongful conduct by Coach Meeks-Rydell and others, and Defendants have in turn demonstrated that they are on notice of the claims asserted by each Plaintiff against them, and the facts that purport to support each claim. See N.R. v. Sch. Bd. of Okaloosa County, 418 F. Supp. 3d 957, 976,

n. 13) (N.D. Fla., September 30, 2019)(Court noted that several counts in the complaint incorporated all 139 paragraphs of the factual allegations and included multiple defendants, that the 99 page complaint was an example of poor pleading practice and that attempting to decipher the specific allegations against each defendant unduly prolonged the court's review of the motions to dismiss; however, the court declined to dismiss the complaint as a shotgun pleading or further delay discovery for re-pleading since the court was able to review the claims substantively.). Accordingly, the Court finds that while the third amended complaint is not a model pleading, it provides Defendants with adequate notice of the claims against them.

Defendants also assert that by reasserting the previously dismissed breach of contract claims against USA and asserting for the first time a 1983 substantive due process claim against Defendant Meeks-Rydell, Plaintiffs have exceeded the scope of the Court's order directing Plaintiffs to file a third amended complaint. With respect to Defendants' argument regarding Plaintiffs' breach of contract claims against USA, Plaintiffs, in their responses, have made clear that they are not pursuing a breach of contract claim against USA; thus, those claims are dismissed.

Defendants also contend that Plaintiffs' prior complaints did not include a 1983 substantive due process claim against Coach

Meeks-Rydell.   Plaintiffs, on the other hand, assert that while Meeks-Rydell was omitted from the "Violation of Substantive Due Process" heading in their previously filed complaints, the body of the paragraph under the 1983 heading clearly alleges that Coach Meeks-Rydell's conduct directly and unreasonably interfered with Plaintiffs' education and participation in the women's volleyball program at the University and created an intimidating, hostile and offensive environment that affected Plaintiffs' psychological and physical well-being, and deprived them of the rights guaranteed to Plaintiffs under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. section 1983. (Doc. 70 at 22).

In resolving this issue, the Court notes that Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under Rule 15, a trial court should not deny leave to amend "without any justifying reason." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed. 2d 222 (1962) Justifying reasons to deny an amendment include: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allow; (2)where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree,

252 F.3d 1161, 1163 (11th Cir. 2001)(citing <u>Foman</u>, 371 U.S. at 182).

A review of Plaintiffs' prior pleadings demonstrate that although Coach Meeks-Rydell's name was omitted from the Section 1983 Substantive Due Process heading utilized in Plaintiffs' prior pleading, allegations regarding Coach Meeks-Rydell's conduct are incorporated by reference and are expressly contained in the body of the Section 1983 substantive due process count. Because leave to amend should be freely given, especially at this juncture where no discovery has occurred, and because Plaintiffs' prior pleadings clearly included allegations that Meeks-Rydell's conduct violated Plaintiffs' substantive due process rights, notwithstanding the omission of her name in the heading, Defendants' assertion that Plaintiffs' Section 1983 substantive due process claims against Meeks-Rydell should be stricken is rejected.

**B. Plaintiffs' Title IX Claim Against Defendant USA**

In their motion to dismiss, the University Defendants argue that Plaintiffs fail to state a Title IX deliberate indifference claim because they have not plausibly alleged that USA was on actual notice of sexual discrimination or harassment prior to December 2020, and that the December 2020 meeting with Plaintiffs Maddux and Soboleski cannot support deliberate indifference. (Doc. 66 at 13, 17). They further argue actual notice to USA cannot be established by Defendants Chilcoat and Gandolfo allegedly

witnessing Coach Meeks-Rydell's actions, and that Plaintiffs cannot recover any punitive or emotional damages under Title IX. (Id. at 19). Plaintiffs respond that University Defendants were all appropriate persons under IX to take corrective action against Coach Meeks-Rydell (Doc. 71 at 14), and that the Defendants had actual notice prior to the December 2020 meeting (Id. at 16). Plaintiffs further argue that the fact that Coach Meeks-Rydell was placed on administrative leave, following the December 2020 reports, is not sufficient to establish that USA took reasonable action because she still had access to team members through Defendants Chilcoat and Gandolfo.

"Title IX prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. Of Educ., 544 U.S. 167, 173, 125 S.Ct. 1497, 161 L. ED. 2d 361 (2005). The statute provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); Sauls v. Pierce Cnty. Sch. Dist., 399 F.3d 1279, 1283 (11th Cir. 2005) (citing 20 U.S.C. § 1681(a)). The Supreme Court has recognized an implied private right of action under Title IX for cases involving intentional sexual discrimination, and it has held money damages are available in such lawsuits. Franklin v. Gwinnett County Public

_Schs._, 503 U.S. 60, 65, 75 (1992).  Among other things, the Court has held that a teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title IX for which money damages are available. _Id._ at 74–76; _see also_ _Davis v. DeKalb County School District_, 233 F.3d 1367, 1371 (11th Cir. 2000); _Gebser v. Lago Vista Indep. Sch. Dist._, 524 U.S. 274, 285, 118 S. Ct. 1989, 141 L. Ed 2d 277 (1998).

The Eleventh Circuit has instructed that the Court's analysis in a "teacher on student" discrimination case is governed by _Gebser._

> In Gebser, the Supreme Court made plain that not all sexual harassment by teachers is sufficient to impose liability on a school district.  Because "Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation," id. at 290, 118 S.Ct. at 1999(citing 20 U.S. C. § 1682), the Court explained that school districts may not be held liable on a theory of respondeat superior or mere constructive notice, id. at 285, 118 S. Ct. at 1997.  Rather, Title IX liability arises only where "an official of the school district, who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." Id. at 277, 118 S.Ct. at 1993.

> Therefore, applying the Gebser framework to the summary judgment context requires three related inquiries. First, the plaintiff must be able to identify an "appropriate person" under Title IX, i.e. a school district official with authority to take corrective measures in response to actual notice of sexual harassment. See Floyd v. Waiters, 171 F.3d 1264, 1264(11th Circuit. 1999). Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment. See Gebser, 524 U.S. at 291, 118 S. Ct. at 2000.  And finally, the official with such notice must exhibit deliberate indifference to the harassment. See _Sauls_, 399 F.3d at 1284.

Broward, 604 F.3d at 1254; see also J.F.K. v. Troup County
School Dist., 678 F.3d 1254, 1255-56 (llth Cir. 2012). Tweaking
Broward to account for the difference in the motion to dismiss
standard, a plaintiff must plausibly set forth in his or her
complaint: (1) the identity of an "appropriate person," i.e. a
school official "with the authority to take corrective measures in
response to actual notice of sexual harassment"; (2) that the
substance of that actual notice was sufficient to alert the school
official of the possibility of the Title IX plaintiff's harassment;
and (3) that the school official with such notice exhibited at
least deliberate indifference to the harassment.  The Court will
address each of these elements in turn.

### 1. "Appropriate Official" For Title IX purposes

"[A]n "appropriate person" under § 1682 is, at a minimum, an
official of the recipient entity with authority to take corrective
action to end the discrimination.  Consequently, in cases like
this one that does not involve official policy of the recipient
entity, we hold that a damages remedy will not lie under Title IX
unless an official who at a minimum has authority to address the
alleged discrimination and to institute corrective measures on the
recipient's behalf has actual knowledge of discrimination in the
recipient's programs and fails adequately to respond." Gebser, 524
U.S. at 290.  The official must be "high enough up the chain-of-

command that his acts constitute an official decision by the [educational institution] itself not to remedy the misconduct. Floyd v. Waiters, 171 F.3d 1264 (11th Cir. 1999).

In Plaintiffs' third amended complaint, they contend that Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo were all "appropriate persons" who were on actual notice of Coach Meeks-Rydell's alleged sexual harassment and abuse and that they responded with deliberate inference.  Plaintiffs also argue that the issue of who is an appropriate official for reporting purposes under Title IX cannot be decided on a motion to dismiss, and cite S.M. v. Sealy Indep. Sch. Dist., 2021 U.S. Dist. 78311 in support of their assertion.

While it is correct that in S.M. v. Sealy Indep. Sch. Dist., the court observed that the question of who is an appropriate official for reporting purposes under Title IX is fact intensive, the court did not hold that the question could not be resolved on a motion to dismiss.  Unlike the instant case, S.M. v. Sealy Indep. Sch. Dist. involved student-on-student harassment, and in that context, the court held that the facts alleged would allow a plausible inference that "the Athletic Director, the coach and the head coach "were appropriate persons" with the power to halt the [student-on-student]abuse." Id. at *17. Similarly, in Kinsman v. Fla. State Univ. Bd. of Trs., 2015 U.S. Dist. Lexis 180599, 2015 WL 11110848, at *2 (N.D. Fla. Aug. 12, 2015), another case cited

30

by Plaintiffs, the court found that in the context of student-on-student harassment, that "it is plausible that the facts will show that [the associate athletic director and the head football coach] had enough authority over a member of the football team to take corrective action.")

Plaintiffs also cite Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ., 505 F. Supp. 3d 1273 (N.D. Fla. Dec. 4, 2020) in support of their assertion that the "appropriate official" inquiry in Title IX cases can only be resolved on summary judgment after the parties have had an opportunity to engage in some discovery. Burks involved alleged coach on student harassment, and the "appropriate official" inquiry came before the court in the summary judgment context. However, there is nothing in the decision that indicates that the court is precluded, at the motion to dismiss stage, from determining whether the plaintiff has alleged facts which allow a plausible inference that the person to whom a report was made was "an appropriate person with the power to halt the abuse." In Burks, the court determined that notice to coaches with less authority than the head coach, who was the alleged harasser, did not constitute actual notice because the plaintiffs failed to show they were in a position to take corrective action with respect to the head coach. Id. at 1280. See also, Weis v. Bd of Trs. of the Fla. Gulf Coast Univ., 2020 U.S. Dist. LEXIS 80701 (M.D. Fla. May 7, 2020) (on a motion to dismiss, the court held

that where the plaintiff, who alleged sexual harassment by a professor, asserted in her amended complaint that she complained to the professor's department chair, "it is certainly a reasonable inference that a department chair at a university has the authority to take corrective action to end discrimination by one of the department's professors against one of the university's students.")

The undersigned finds that while Plaintiffs are entitled, under the motion to dismiss standard, to the benefit of reasonable inferences from the facts pled, Iqbal, 556 U.S. at 678, merely alleging that Defendants were "appropriate persons" is not sufficient to make it so.  In this case, Plaintiffs have alleged, with respect to Defendants Erdmann, Frisbey and Moore, that they served as athletic director and assistant athletic directors respectively and that they had supervisory authority over Meeks-Rydell.  While it may turn out otherwise[3], it is certainly a reasonable inference that an athletic director or assistant athletic director at a university has the authority to take corrective action to end discrimination by one of the university's coaches against one of its students.  The same cannot be said with respect to Plaintiffs' assertions concerning Defendants Chilcoat and Gandolfo.  Plaintiffs assert that Defendants Chilcoat and

---

[3] The ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles may vary among universities.  See e.g. Broward, 604 F.3d at 1256.

Gandolfo were assistant USA volleyball coaches and that Meeks-Rydell was the head volleyball coach.  Given their asserted roles, Plaintiffs do not allege, nor can a reasonable inference be drawn that the assistant coaches had the authority to discipline and correct the head coach.  See Floyd v. Waiters, 171 F.3d 1264 (The official must be "high enough up the chain of command that his acts constitute an official decision by the [educational institution] itself not to remedy the misconduct.").  Accordingly, viewing the facts in the light most favorable to Plaintiffs, the Court finds that while Plaintiffs have plausibly alleged that Defendants Erdmann, Frisbey and Moore had the authority to institute corrective measures over Meeks-Rydell's alleged misconduct and thus were "appropriate officials" within the meaning of Title IX, they have failed to do so with respect to Defendants Chilcoat and Gandolfo.

## 2. Existence and Substance of Notice

The Court's next inquiry focuses on the existence and substance of the notice received by the "appropriate officials" as private damages are only available where recipients of federal funding have had actual and adequate notice. Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 640-42, 119 S.Ct. 1661, 143 L. Ed. 2d 839 (1999).  "There are different ways by which such actual notice may be satisfied." J.F.K. v. Troup County Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012).  While

notice of sexual harassment provided by or on behalf of the specific plaintiff asserting a Title IX claim would be sufficient, it is not a necessary requirement. "Actual notice" of a Title IX plaintiff's harassment need not be provided by the plaintiff herself. Broward, 604 F.3d at 1257 (citations omitted). Indeed, "no circuit has interpreted [the] actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff herself." Id. (emphasis in original) (citations omitted); see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp., 551 F.3d 599, 605-06 (7th Cir. 2008) (Under Title IX, "a school district need not possess actual knowledge of a teacher's [harassment] directed at a particular plaintiff." (emphasis in original)(citations omitted); see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp. 551 F.3d 599, 605-06 (7th Cir. 2008) (Under Title IX, "a school district need not possess actual knowledge of a teacher's [harassment] directed at a particular plaintiff." (emphasis in original)(citation omitted)); Escue v. N.OK Coll., 450 F.3d 1146, 1154 (10th Cir. 2006) ("[T]he actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.")(citations and quotation omitted).

A second way to satisfy the notice requirement would be to show that an appropriate official had actual knowledge of sexual harassment by Meeks-Rydell of players other than Plaintiffs

sufficient to alert the official to the possibility of Meeks-Rydell's sexual harassment of Plaintiffs. J.F.K., 678 F.3d at 1260. An educational institution may be deemed to have "actual notice" of a student-plaintiff's harassment in a "teacher-on-student" case when it is aware of the teacher's "similar misconduct with other students". Bailey v. Orange Cty Sch. Bd., 222 Fed Appx. 932, 933 (11th Cir. 2007). Establishing actual notice in such a fashion is fact-intensive, and is sometimes successful and sometimes insufficient. See e.g. Broward, 604 F.3d at 1250-54, 1259 (two prior complaints were enough to satisfy Doe's burden of raising a material fact about actual notice because "[the two]complaints, when viewed collectively, provided actual notice to [the Principal] of a pattern of sexual harassment and a series of related allegations occurring over a period of nine months in [the teacher's] math classroom."); J.F.K., 678 F.3d at 1261 (while appropriate official knew employee's conduct was "inappropriate, devoid of professionalism, and reeked of immaturity," the known conduct was not of the same type of conduct of a sexual nature as the teacher in Broward); Davis, 233 F.3d at 1373 (a prior complaint about the teacher-abuser by a non-party victim was not enough to put principal and school board on notice); Doe A v. Plainfield Cmty Consol. Sch. Dist. 202, 2022 U.S Dist. LEXIS 92894, 2022 WL 1641684 (N.D. Ill. May 24, 2022) (in resolving motion to dismiss, court held that the plaintiffs' assertion that Defendant Coaches

"knew or should have known" that the football team had a long-standing custom, tradition or practice of assaulting team members in a sexual manner was wholly conclusory, and that the plaintiffs had not identified a school official with the appropriate authority to take action who witnessed or was told about the attack and then failed to take action.); see also H.C. v. Sch. Bd. of Palm Beach Cnty, 2022 U.S. Dist. LEXIS 205086 (S.D. Fla. Nov. 10, 2022) (the complaint fails to provide sufficient facts from which the Court can plausibly infer, that an appropriate person has actual notice that teacher was sexually harassing or abusing the plaintiff).

The undersigned finds, as a preliminary matter, that Plaintiffs have failed to offer facts to support their conclusory assertions that USA should have been on notice that Meeks-Rydell had a propensity to engage in sexual harassment based on her reputation at her prior university. Aside from this conclusory assertion, Plaintiffs have offered no facts from which the Court could plausibly infer that Defendants should have been on notice regarding Coach Meeks-Rydell alleged misconduct based on her prior employment. Plaintiffs have likewise failed to assert that reports made by other students or players regarding alleged sexual harassment by Meeks-Rydell would have placed USA on notice[4].

_____

[4] Plaintiffs allege that due to misconduct by the prior volleyball coach, Frisbey assured the volleyball players that they would closely supervise Meeks-Rydell when she was hired as USA's volleyball coach; however, the Court fails to see how alleged

Of the 8 Plaintiffs, only Johnson, Kazee, Maddux and Soboleski allege that they complained to USA officials concerning Coach Meeks-Rydell.  According to Johnson, she suffered a concussion in February 2019 after Defendant Chilcoat spiked a ball that hit her head during drills.  Johnson asserts that she suffered a concussion as a result, and following her concussion, her mother contacted Defendant Frisbey and other members of the University's Administration to notify them of the "highly concerning and improper practices Defendants Meeks-Rydell, Chilcoat, and Gandolfo were conducting with the Volleyball Team, and how such improper practices concerned the health and safety of Johnson and the Volleyball Team Members under Defendants." (Doc. 64 at 30-31). The Court finds that Johnson's allegations as to what her mother told Frisbey in 2019 is not alleged with sufficient detail to establish actual knowledge of sexual harassment, assuming that Frisbey was an appropriate person for reporting purposes. Gebser, 524 U.S. at 291 (the Supreme Court noted that a single complaint from parents charging that a teacher made "inappropriate comments during class" was "plainly insufficient" to provide actual knowledge of the teacher's relationship with a student).

Plaintiff Kazee asserts that she was hospitalized, bedbound and unable to move for two weeks after Defendants forced her to

---

misconduct by the prior coaching regime  sufficed to place USA on notice that the new coach would likewise engage in misconduct.

crawl out of the gym, and that in December 2020, she and her parents had a conference via zoom with Defendants Frisbey and Coach Meeks-Rydell, and during the conference, they informed Frisbey of Coach Meeks-Rydell's "inappropriate conduct, in detail, towards Kazee and the team. "Specifically, Plaintiff Kazee detailed the circumstances that led to her October 2020 hospitalization-where coaching staff told her to "suck it up or get out" and denied her medical attention". (Id.) According to Kazee, during the conference, Frisbey also witnessed Coach Meeks-Rydell's inappropriate and irrational anger toward Kazee's mother for "unfriending" her on Facebook. (Id.) The Court finds that like Johnson, Kazee's allegations as to what she and her parents reported to Frisbey in December of 2020 is not alleged with sufficient detail to establish actual knowledge of sexual harassment assuming that Frisbey was an appropriate person for reporting purposes. See Doe v. Morehouse Coll., Inc., 2022 U.S. Dist. LEXIS 146807, 2022 WL 3369634 (N.D. Ga. Aug. 16, 2022) (in granting motion to dismiss, the Court held that the plaintiff failed to allege when she first reported alleged harassment to Clark University or what exactly she reported, and that absent allegations of what Clark University was on notice of, the Court cannot find that the University acted with deliberate indifference to the plaintiff's reports, particularly where University did in fact respond to one of the plaintiff's complaints.)

The same holds true for Plaintiff Tipping's assertions about a meeting with Defendants Moore and Meeks-Rydell in January 2020. Tipping, who is from Argentina, contends that Moore and Meeks-Rydell falsely advised her that she would be fined over $6000 for leaving USA and coerced her into writing the NCAA and reporting a false reason for why she was leaving USA. There is nothing about Tipping's assertions from which it could be plausibly inferred that this placed an appropriate USA official on notice of alleged sexual harassment by Coach Meeks-Rydell. Her allegations that "[i]n order to perpetuate the physical and emotional abuse and sexual harassment and conceal the wrongful and illegal conduct from the NCAA- -and therefore also keep such conduct out of the public eye-Defendants Moore and Meeks-Rydell convinced Plaintiff Tipping that they would take care of the falsely manufactured "fine" if Plaintiff Tipping penned a letter to the NCAA" stating she was leaving USA due to concerns about fires in Australia are conclusory at best. Moreover, they also fall short of raising a reasonable inference that she placed Defendant Moore or any other USA official with authority to take corrective action on notice regarding alleged <u>sexual harassment</u> by Meeks-Rydell.

Plaintiffs Maddux and Soboleski contend that in December 2020, they "expressed concerns and complaints about Defendant Meeks-Rydell's physical, emotional, and sexual abuse [to] Defendants Frisbey and Erdman". (<u>Id.</u> at 33). Plaintiff Soboleski also

asserts that on multiple occasions while the team and coaching staff were traveling for away games, Defendant Meeks-Rydell summoned her to her hotel room and engaged in "inappropriate" sexual conduct, and on one occasion, Meeks-Rydell forced her to lay in bed with her under the blankets and told her to "use her [Meeks-Rydell's] boobs as a pillow." Soboleski asserts that she informed Defendants Erdmann and Frisbey of this conduct in December 2020. (Doc. 64 at 34). The Court finds that while Maddux's alleged report lacks specificity, Soboleski's factual assertions provide sufficient detail, and viewing those facts, in the light most favorable to Plaintiffs, they are sufficient to plausibly state that Defendants Frisbey and Erdman were placed on actual notice of alleged sexual harassment by Coach Meeks-Rydell in December 2020.

### 3. Deliberate Inference

Title IX requires "that a recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." Davis, 526 U.S. at 641 (citing Gebser, 524 U.S. at 291). Liability arises from "an official decision by the recipient not to remedy the violation." Gebser, 524 U.S. at 290. An official with notice of sexual harassment is deliberately indifferent "where the [] the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648.

Plaintiffs herein allege that the Maddux/Soboleski meeting with Frisbey and Erdman took place in December 2020, that Coach Meeks-Rydell was placed on administrative leave in January 2021, and that she resigned in February 2021.  Plaintiffs' assertion that USA was indifferent to their complaints is at odds with their assertion that USA placed Coach Meeks-Rydell on administrative leave a month after the Frisbey/Erdman meeting in December 2020. Davis, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts on a motion to dismiss, for summary judgment or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law").  While Plaintiffs allege that Coach Meeks-Rydell continued to coach the volleyball team, "using Chilcoat as her proxy", they have failed to allege facts from which it can be plausibly inferred that USA's action did not put an end to the alleged harassment. And, Soboleski's assertion that Frisbey showed indifference during the meeting because in response to her concern about how Coach Meeks-Rydell would react when she learned of their complaints to Frisbey and Erdman, Frisbey stated that there are worst things than getting kicked off of the basketball team does not change the fact that USA took action by placing Coach Meeks-Rydell on administrative leave in January 2021. Significantly, not a single Plaintiff contends that she had any further contact with Coach Meeks-Rydell *after* the Maddux/Soboleski

meeting with Frisbey and Erdman in December 2020. Accordingly, Plaintiff's Title IX claim against USA is due to be dismissed.

**C. 42 U.S.C § 1983 claims**

**1. 42 U.S.C § 1983 and Qualified Immunity**

Parties acting under color of law can be liable for constitutional violations through 42 U.S.C § 1983. To successfully state a claim under this statute, "a plaintiff must prove (1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors." Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A defendant accused of violating a plaintiff's constitutional rights may nevertheless be shielded from liability if he is entitled to qualified immunity for his actions.

Qualified immunity protects government officials performing their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999)(citation omitted). The party invoking a qualified immunity defense has the burden of showing that he was acting within his discretionary authority. Vinyard v.

Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  The burden then shifts to the plaintiff to show that the defendant violated her constitutional rights, and the right was clearly established when the violation occurred. Id.  Law that is clearly established puts the government official "on notice" that his actions are clearly unlawful. Id. at 1350.

**2. Substantive Due Process Claims against Coach Meeks-Rydell**

Plaintiffs allege that courts recognize the substantive due process right of bodily integrity-which includes the rights of students not to be subject to sexual, physical and psychological abuse, including excessive corporal punishment, and they seek to assert a substantive due process claim against Meeks-Rydell for alleged sexual harassment and excessive corporal punishment. (Doc. 71 at 27-28).

The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Clause contains a substantive component which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (citation omitted); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) ("The substantive component of the Due Process Clause protects those rights that are

"fundamental," that is, rights that are "implicit in the concept of ordered liberty""). While Plaintiffs argue they have a constitutionally protected interest in their bodily integrity, they have cited no controlling authority for this proposition. However, the undersigned is cognizant that some courts have recognized a constitutionally protected liberty interest in a person's bodily integrity derived from the substantive due process component of the Fourteenth Amendment, and that it is necessarily violated when a state actor sexually abuses a schoolchild. Hackett v. Fulton Cty. Sch. Dist., 238 F. Supp. 2d 1330, 1353 (N.D. Ga. 2002) (recognizing "a 'liberty' interest by a student in his 'bodily integrity' such that when a state actor, such as a public teacher, violates that 'bodily integrity', a claim under the Fourteenth Amendment arises.").

Substantive due process is violated only when state conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citations omitted); White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999) (holding that only conduct that is "arbitrary, or conscience shocking, in a constitutional sense," violates of substantive due process, "and that standard is to be narrowly interpreted and applied.")

The Supreme Court has acknowledged that "the measure of
what is conscience-shocking is no calibrated yard
stick." <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847,
118 S.Ct. 1708, 140 L. Ed. 2d 1043 (1998). We know for
certain, however, that a showing of negligence is
insufficient to make out a constitutional due process
claim. <u>Id.</u> at 847-48. And even intentional wrongs
seldom violate the Due Process Clause. Acts "intended
to injure in some way unjustifiable by any government
interest" are "most likely to rise to the conscience-
shocking level." <u>Id.</u> But, even conduct by a government
actor that would amount to an intentional tort under
state law will rise to the level of substantive due
process violation only if it also "shocks the
conscience." <u>Dacosta v. Nwachukwa</u>, 304 F.3d 1045, 1048
(lth Cir. 2002).

"[O]nly the most egregious official conduct can be said
to be arbitrary in the constitutional sense." <u>Lewis</u>,
523 U.S. at 846.

<u>Waddell v. Hendry Cty. Sheriff's Office</u>, 329 F. 3d 1300, 1305 (llth

Cir. 2003)(citation omitted). Accordingly, as a threshold matter,

this Court must determine whether the facts, viewed in the light

most favorable to Plaintiffs, involve conduct inflicted upon

Plaintiffs that "shocks the conscience." [5]

---

[5] In the school setting, the Eleventh Circuit has adopted a
separate test that must be met before liability can be found based
on action that constitutes corporal punishment. It requires a court
to find that the action is "obviously excessive" as an objective
matter and subjectively intended in such a way that it was
reasonably foreseeable that serious bodily injury would result.
<u>See</u> <u>T.W. ex rel. Wilson v. Sch. Bd of Seminole Cty.,</u> Fla. 610 F.3d
588, 589-99 (llth Cir. 2020)("The key inquiry is not what form the
use of force takes but whether the use of force is related to [the
student's] misconduct at the school and. . .for the purpose of
discipline.)(citation and quotation omitted). Whether alleged
mistreatment is deemed corporal punishment or not, liability will
only arise in "extraordinary circumstances" that constitute action
that is so brutal, demeaning and harmful as literally to shock the
conscience of the court. <u>Id.</u> at 602. In other words, the same

Whether conduct "shocks the conscience" depends on the factual circumstances of a particular case. Nix v. Franklin Cty Sch. Dist., 311 F.3d 1373, 1375 (11th Cir. 2002). Nix involved the death of a high school student who was electrocuted during a voltage-reading demonstration in his class. The Eleventh Circuit affirmed the grant of summary judgement to the defendants, and cautioned that in analyzing whether conduct shocks the conscience, courts should avoid allowing substantive due process to encroach into the tort field. Id. at 1376.

In another case that arose in a school setting, the Eleventh Circuit determined that the plaintiff had sufficiently alleged a substantive due process claim based on conduct that shocked the conscience where a high school coach struck the plaintiff with a weight lock, knocked his eyeball out of its socket, and permanently blinded him in his eye.  Neal, 229 F. 3d at 1074.  The court reasoned that the student's substantive due process rights were implicated because the coach's exercise of corporal punishment was "so brutal, demeaning and harmful as literally to shock the conscience of the court." Id. at 1075.  The court concluded: "[t]he

---

"shocks the conscience" standard applies to a plaintiff's claim regardless of whether it arise from actions characterized as "corporal punishment" or "abuse." See Hatfield v. O'Neill, 534 Fed Appx. 838, 845 (11th Cir. 2013) (applying the 'shock the conscience' standard we have previously employed in our corporal punishment cases" to conduct that was not considered to be corporal punishment).

test we adopt today will, we think, properly ensure that students will be able to state a claim only where the alleged corporal punishment truly reflects the kind of egregious official abuse of force that would violate substantive due process protections in other, non-school contexts." Id. at 1076.

Similarly, the Eleventh Circuit in Kirkland ex rel. Jones v. Greene Cty Bd. of Educ., 347 F.3d 903, 904 (11th Cir. 2003), affirmed that a principal's action in striking a thirteen-year old student with a metal cane in the neck, ribs, and back-including once on the head as the student was doubled over protecting his chest, with sufficient force to leave a large knot on his head and causing him to suffer continuing migraine headaches-constituted "conscience-shocking behavior" when the student was unarmed and not physically threatening in any manner. Id. (citation and quotation omitted).

While the above-referenced cases involved school-age children, DaCosta v. Nwachukwa, 304 F.3d 1045 (11th Cir. 2002) involved a professor/student conflict at Georgia Military College. In DaCosta, the Eleventh held that a college professor's violent and malicious behavior toward the plaintiff, a student, did not raise to the level of a substantive due process violation.  The plaintiff in DaCosta alleged facts reflecting that she and the professor had a disagreement that culminated in the professor purposefully slamming the door in her face. Id. at 1047. As the plaintiff

attempted to protect her face from the door, her arm shattered the glass window on the door and became lodged in the cracked pane. Id. at 1047.  The professor then "violently swung" the door back and forth several times in an attempt to knock the student back from the door. Id.  After that proved unsuccessful, the professor reached through the cracked glass pane, shoved the student's face, and tried to forcibly dislodge her arm from the window. Id. Several other students in the class had to physically restrain the professor until police arrived and arrested the professor for criminal battery.  On appeal, the Eleventh Circuit reversed the district court's denial of the professor's motion to dismiss, even though it noted that the facts described the tort of intentional battery.  Id. at 1048.  The court explained that "such conduct, malicious as it may have been" did not amount to a federal constitutional violation.  Id.

Similarly, in Skinner v. City of Miami, 62 F.3d 344 (11th Cir. 1995), a firefighter sued his colleagues for violating his substantive due process rights by hazing him in an especially degrading and humiliating fashion.  Id. at 346.  Specifically, the plaintiff alleged that his colleagues threw him to the floor and handcuffed him.  While handcuffed on the floor, a colleague, who was naked, straddled the plaintiff's chest, grabbed his head, and rubbed his scrotum over the top of the plaintiff's head.  The case went to trial and the jury returned a verdict for the plaintiff.

On appeal, the Eleventh Circuit reversed and held that while the plaintiff had proven that he was assaulted, that was a tort created by state law. The court held that plaintiff had failed to point to any authority demonstrating that he had suffered a constitutional deprivation as opposed to a state law tort. Thus, he was not entitled to recover under Section 1983.

In another case, Davis v. Carter, 555 F.3d 979, 982 (11th Cir. 2009), the Eleventh Circuit once again discussed the standard required to state a substantive due process claim. In Davis, the parents sued the school system and various school employees, including the football coaches for violations of their son's substantive due process rights after the son died the morning after a voluntary workout session for the football team. The parents alleged that their son was subjected to intense and unreasonable practice that caused him to collapse and die the next morning, that the coaches failed to provide enough water to keep their son hydrated, ignored signs and his complaints that he was becoming dehydrated, subjected him to rigorous conditioning drills at the end of a two-hour practice, and failed to check on him until after a team meeting although he had collapsed in the middle of drills. On the defendant's motion to dismiss, the district court dismissed the parents' claims against the school system and some of the system employees, but concluded that the parents' allegations were sufficient to support a finding that the coaches acted willfully

or maliciously with an intent to injure the student and that the coaches were not entitled to qualified immunity.  On appeal, the Eleventh Circuit determined that the facts militated more toward a finding that the coaches were deliberately indifferent to the safety risks posed by their conduct, but that in the school setting, the complaint's allegations of deliberate indifference, without more, did not rise to the conscience-shocking level required for a constitutional violation." Id. at 984.  The court noted that while the circumstances of the student's death was "truly unfortunate", the parents' claims were "properly confined to the realm of torts." Id.

Later, in Daniel v. Hancock Sch. Dist., 626 Fed. Appx. 825 (11th Cir. 2015), the Eleventh Circuit once against stressed that where  a plaintiff claims a violation of substantive due process, to prevail, the plaintiff must prove that the defendant's conduct shocks the conscience, and that in non-custodial circumstances, the standard is "exceedingly high" and is to be "narrowly interpreted and applied", such that "even intentional wrongs seldom violate the Due Process Clause". Id. at 829-830.  In Daniel, a football coach alleged that police officers tasked with providing security at a football game violated his substantive due process rights when they purposefully pepper-sprayed his players for the purpose of injuring and disabling them so as to assist players from the opposing team in assaulting them. The plaintiff alleged

that in the altercation, he was assaulted by a student assailant and sustained serious and permanent injuries as a result.  In affirming the district's order granting the defendants' motion to dismiss, the appellate court held that as terrible as the allegations were, they did not satisfy the "shocks the conscience" standard and that the harm the plaintiff suffered was redressable through his state law claims.  Id.

Against this backdrop of cases, and construing the facts in the light most favorable to Plaintiffs with respect to their assertions regarding alleged sexual harassment, and physical and emotional abuse by Coach Meeks-Rydell, they do not meet the "exceedingly high" standard required for a substantive due process violation.  Plaintiffs' allegations of butt pinches, forced hugs, forced "I love yous", unwelcomed kisses to the forehead/cheeks, 4:00 a.m. breakfast club drills, foul language and accusations of faked injuries, and an occasion during an out of town trip when Plaintiff Soboleski was forced to share a hotel room and bed with Coach Meeks-Rydell and encouraged to use the Coach's "boobs" as her pillow, this conduct, while actionable as state torts, does not rise to the level of extreme conduct that the Eleventh Circuit determined in Dacosta, and the other cited cases,  was not sufficient to demonstrate the "arbitrary, egregious and conscience-shocking behavior" necessary to establish a substantive

due process violation[6].   Moreover, assuming *arguendo* that the alleged conduct did rise to the level of conscience-shocking, Plaintiffs have not identified any controlling cases from which this Court could conclude that at the time of the alleged misconduct, the law was clearly established that there is a constitutional, substantive due process right to be free from

---

[6] The undersigned observes that there exist cases from lower courts within the Eleventh Circuit where courts concluded that the minor plaintiffs alleging sexual harassment by teachers had stated a plausible substantive due process claims.  The cases involved minors, as opposed to college students, and alleged conduct far worse than what is alleged in this case. For instance, Hackett v. Fulton County School District, 238 F. Supp. 2d 1330 (N.D. Ga. 2002)(high school teacher came up with an elaborate ruse to have minor students  come to his house to compete and perform a series of experiments for a non-existent scholarship.  During one of the experiments, the student was instructed to put on a blindfold, and discern whether a male or female doctor was touching him.  The teacher was performing the "experiment" and inappropriately touched the student's body, including his genitals.); Thomas v. City of Clanton, 285 F. Supp. 2d 1275, 1278 (M.D. Ala. 2003)(Minor was arrested and the arresting officer instructed him to take off his clothes, bend over and grab his ankles while he strip-searched him.  Later, the officer took the minor to his home and offered him alcoholic drinks and asked if he had ever performed oral sex on a man. 285 F. Supp. 2d at 1279.

Based on the facts alleged, the courts in Hackett and Thomas found that the alleged sexual abuse of school age students rose to the level of a substantive due process violation. Compare Doe v. Perkins, 2020 U.S. Dist. LEXIS 172390 (N.D. Ala. September 21, 2020) (the court held that a high school student's allegations that her coach would "intentionally" brush up against her breasts while guarding her in basketball practice and on one occasion, he grabbed her butt were neither arbitrary nor conscience-shocking. The Court noted that while the conduct appeared serious enough to support a state-law tort, the allegations did not shock the conscience.)

unwanted touching by a college coach under circumstances similar to those alleged here. Thus, Plaintiffs cannot overcome qualified immunity.

### 3. Substantive Due Process Claims against Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo

Plaintiffs have also asserted substantive due process claims against the USA Defendants, namely Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo, and appear to base their claims on their assertions that Defendants had knowledge of Coach Meeks-Rydell's sexual, emotional, and physical abuse of Plaintiffs and failed to take appropriate corrective action. Supervisors are not responsible for their subordinate's unconstitutional acts "based on respondeat-superior or vicarious-liability principles." Piazza v. Jefferson Cnty, Ala., 923 F.3d 947, 957 (11th Cir. 2019). Instead, a supervisor can only be held liable under Section 1983 "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation". Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (citations omitted.)

To state a claim against a government actor for a violation of substantive due process, a plaintiff must allege conduct that "shocks the conscience." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (citations omitted). A state official's

deliberate indifference may constitute a due process violation but, in the "non-custodial setting," the alleged violation would "require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [the plaintiffs'] position." Id. (citation omitted).

As a preliminary matter, the undersigned observes that the Plaintiffs' allegations against these Defendants are vague at best. None of the individual Plaintiffs have alleged that any of these Defendants engaged in any conduct that could arguably be described as sexually harassing. While Plaintiffs have alleged that Defendants Chilcoat and Gandolfo, both assistant coaches, were present during some of the extreme practices and drills, and that in February 2019, Plaintiff Johnson suffered a concussion when Chilcoat spiked a ball that hit her head during practice drills, said conduct pales in comparison to the professor's conduct that was found to be insufficient in Dacosta. And, Plaintiffs' assertions that Defendants were deliberately indifferent is belied by their own factual assertions that Plaintiffs Maddux and Soboleski informed Defendants Erdmann and Frisby of Coach Meeks-Rydell sexual harassment during a meeting in December 2020, and Coach Meeks-Rydell was placed on administrative leave in January 2021. While Plaintiffs conclusory allege that Coach Meeks-Rydell still had access to the team through the assistant coaches, the third amended complaint is devoid of any allegations that

Plaintiffs continued to be subject to sexual or other abuse from Coach Meeks-Rydell or anyone else.  Simply put, Plaintiffs have failed to plausibly allege any conscience-shocking conduct by any of these Defendants.  Because Plaintiffs' claims are not sufficient to establish a substantive due process violation, Defendants are entitled to qualified immunity on Plaintiffs' 1983 claims.

### D. Remaining State Claims

Considering the factors of judicial economy, convenience, and fairness to the litigants, the Court declines to exercise supplemental jurisdiction over the remaining state law claim as no scheduling order has yet been entered and discovery has not yet commenced.  See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging district courts to dismiss remaining state claims when federal claims have been dismissed before trial).  Accordingly, Plaintiffs' state law claims are dismissed without prejudice. Daniel, 626 Fed. Appx at 836 (the district court properly dismissed Daniel's federal claims; thus, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction.)

### IV.  <u>CONCLUSION</u>

For the reasons discussed above, Defendants the University of South Alabama, Joel Erdmann, Jinni Frisbey, Chris Moore, Rob Chilcoat and Patricia Gandolfo's Motion to Dismiss  Plaintiffs' Third Amended Complaint (Doc. 66) and Defendant Alexis Meeks-

Rydell's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 68) are **GRANTED.** Specifically, Plaintiffs' Title IX against University of South Alabama and Substantive Due Process claims against Erdmann, Frisbey, Moore, Chilcoat, Gandolfo and Meeks-Rydell are **DISMISSED WITH PREJUDICE.** Plaintiffs' breach of contract claim against the University of South Alabama is **DISMISSED WITH PREJUDICE,** and the remaining state law claims Erdmann, Frisbey Moore, Chilcoat, Gandolfo and Meeks-Rydell against all Defendants are **DISMISSED WITHOUT PREJUDICE.**

   **ORDERED** this the **27th** day of **March 2023.**

                              /s/ KRISTI K. DUBOSE
                              **KRISTI K. DUBOSE**
                              **UNITED STATES DISTRICT JUDGE**